**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Mahoning Cty. Bar Assn. v. McNally*, **Slip Opinion No. 2018-Ohio-3719.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3719

MAHONING COUNTY BAR ASSOCIATION *v.* MCNALLY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Mahoning Cty. Bar Assn. v. McNally*, Slip Opinion No. 2018-Ohio-3719.]**

*Attorneys—Misconduct—Misdemeanor convictions involving dishonesty—One-year license suspension conditionally and partially stayed.*

(No. 2017-1743—Submitted January 24, 2018—Decided September 18, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-009.

_____

**Per Curiam.**

**{¶ 1}** Respondent, John A. McNally IV, of Youngstown, Ohio, Attorney Registration No. 0067328, was admitted to the practice of law in Ohio in 1996.

**{¶ 2}** In a complaint certified to the board on February 14, 2017, relator, Mahoning County Bar Association, alleged that McNally committed multiple ethical violations while serving as a Mahoning County Commissioner in 2006 and

2007. The complaint focused on actions McNally took to oppose a property acquisition that had been approved by his fellow commissioners. McNally pleaded guilty to four misdemeanor charges: one count of attempted unlawful use of a telecommunications device, one count of attempted disclosure of confidential information acquired in the course of public duties, and two counts of making false statements in an official proceeding.

{¶ 3} The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors and sought to dismiss six of the eight violations alleged in the complaint. The matter proceeded to a hearing before a panel of the Board of Professional Conduct. The panel adopted the parties' stipulations of fact and agreed that McNally's conduct violated former DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and unanimously dismissed the remaining allegations of the complaint.[1] Based in part on the panel's findings that McNally did not in fact disclose confidential information and that his false testimony did not pertain to a material matter in the underlying lawsuit, the panel recommended that he be publicly reprimanded for his misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction, and no objections have been filed.

{¶ 4} We agree that McNally's conduct violated DR 1-102(A)(4) and Prof.Cond.R. 8.4(b). But for the reasons that follow, we believe that McNally's conduct warrants a greater sanction. We therefore suspend McNally from the practice of law for one year with six months of the suspension stayed on the condition that he engage in no further misconduct.

---

1. Because respondent's misconduct occurred both before and after the adoption of the Rules of Professional Conduct on February 1, 2007, relator charged respondent under the applicable rules of both the former Code of Professional Responsibility and the current Rules of Professional Conduct.

**Misconduct**

{¶ 5} McNally was elected to the three-member Mahoning County Board of Commissioners in 2005. At that time, the Mahoning County Department of Job and Family Services ("JFS") had been leasing offices from the Ohio Valley Mall Company ("Ohio Valley") for approximately 18 years. Although the commissioners had begun to discuss moving the agency when the lease expired and became a month-to-month tenancy in 1998, they did not take any action until they sought to purchase the Oakhill Renaissance Center ("Oakhill") from the Southside Community Development Corporation ("SCDC") in 2006.

{¶ 6} The commissioners had declined SCDC's offer to donate Oakhill to the county in 2004. But in May 2006, SCDC filed for bankruptcy, and the bankruptcy trustee offered the property for sale. Over McNally's dissent, a majority of the commissioners authorized the county to assume a $430,000 debt to the Ohio Department of Development that was related to the Oakhill facility and later authorized county officials to make an offer to purchase Oakhill. The trustee sent letters to potential bidders, including the Cafaro Company—the parent company of Ohio Valley—stating that additional bids would be accepted until July 7, 2006. On that date, the county administrator made a second offer to purchase Oakhill for $75,000 and assume all debts connected with building. Three days later, the trustee sought the bankruptcy court's approval of the county's second offer.

{¶ 7} Believing that the majority of the commissioners and the county administrator had failed to perform sufficient due diligence and exceeded their legal authority in offering to purchase Oakhill, the county treasurer, the county auditor, and McNally filed objections to the proposed purchase in SCDC's bankruptcy case. But before doing so, McNally faxed a copy of the county's offer to counsel for the Cafaro Company. On July 27, 2006, the bankruptcy court authorized the trustee to sell the Oakhill property to the county over the objections. The following day, the

majority of the commissioners voted to ratify the purchase over McNally's objections, paying $75,000 and assuming nearly $900,000 in liens and debt.

{¶ 8} In August 2006, Ohio Valley filed two lawsuits—a taxpayer action seeking to rescind the county's purchase of Oakhill and a breach-of-contract action seeking more than $1,000,000 in damages for the county's failure to maintain the JFS premises in accordance with the terms of their lease. The court ruled against Ohio Valley in the taxpayer action and allowed the county to proceed with the Oakhill purchase. The county later settled Ohio Valley's breach-of-contract claim for $913,590.

{¶ 9} In spring 2008, the Youngstown Vindicator began to run articles suggesting that the county auditor, the county treasurer, and McNally had engaged in unethical conduct while opposing the county's acquisition of Oakhill. The following November, the Mahoning County Court of Common Pleas appointed a special prosecutor to oversee an ongoing investigation of the acquisition. In July 2010, the county auditor, the county treasurer, McNally, and others were indicted on multiple criminal charges, but the indictment against McNally was later dismissed without prejudice.

{¶ 10} In May 2014, McNally and others were indicted in Cuyahoga County on 73 counts, including tampering with records, perjury, money laundering, telecommunications fraud, and unlawful influence of a public official. In February 2016, McNally pleaded guilty to four misdemeanors. The remaining counts of the indictment pertaining to him were dismissed.

{¶ 11} Two of the charges in McNally's plea—attempted unlawful use of a telecommunications device and attempted disclosure of confidential information acquired in the course of a public official's duties—related to his faxing a copy of the county's July 7, 2006 Oakhill purchase offer to counsel for the Cafaro Company, which opposed the county's acquisition of Oakhill. The two remaining counts of making false statements in an official proceeding arose from McNally's

false deposition testimony in the taxpayer action. McNally falsely testified that he had not received any assistance in drafting a letter that he had sent to the director of JFS, when, in fact, some of the information in the letter had come from material that he had received from the Cafaro Company. He also denied that he had been aware of the taxpayer action before it was filed—even though he had received an advance copy of the complaint from one of Cafaro's attorneys.

{¶ 12} The Cuyahoga County Court of Common Pleas sentenced McNally to one year of community control and ordered him to perform 20 hours of community service, pay a fine of $3,500 and court costs of $3,098.58, and place his law license on inactive status for the duration of his community control. McNally complied with the terms of his sentence, and the parties have stipulated that his community control has been terminated. His bar status is now active.

{¶ 13} The parties agreed and the board has found that McNally's conduct involved dishonesty, fraud, deceit, or misrepresentation in violation of DR 1-102(A)(4) and constituted illegal acts that adversely reflected on his honesty or trustworthiness in violation of Prof.Cond.R. 8.4(b).

{¶ 14} We adopt these findings of fact and misconduct.

### Sanction

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, aggravating and mitigating factors, and the sanctions imposed in similar cases. *See* Gov.Bar R. V(13)(A).

{¶ 16} As aggravating factors, the parties stipulated and the board found that McNally had pleaded guilty to multiple offenses, *see* Gov.Bar R. V(13)(B)(4), though the board noted that they arose out of the same series of events. In addition to adopting the parties' agreed mitigating factors—including the absence of a prior disciplinary record, the absence of a dishonest or selfish motive, full and free disclosure to the board based on McNally's self-reporting of his misdemeanor

convictions to relator, evidence of his good character and reputation, and the imposition of other penalties or sanctions in his criminal case—the board also noted McNally's significant community involvement and commitment to public service. *See* Gov.Bar R. V(13)(C)(1), (2), (4), (5), and (6).

{¶ 17} The board recognized that conduct involving dishonesty, fraud, deceit, or misrepresentation typically compels an actual suspension from the practice of law. *See*, *e.g.*, *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180, ¶ 41.

{¶ 18} Nonetheless, the board recommended that McNally be publicly reprimanded for his misconduct in light of the significant mitigating factors present in this case and its determination that the uncontroverted evidence adduced at the hearing established that (1) McNally's faxed communication "was not an improper disclosure of confidential information" because the terms and conditions of the offer had been publicly disclosed in the bankruptcy proceeding and a local business publication and (2) "the false testimony provided in deposition [sic] did not pertain to a material matter in the underlying lawsuit." Regardless, the judgment entry of McNally's convictions conclusively establishes his guilt with respect to those offenses. *See Disciplinary Counsel v. Forbes*, 122 Ohio St.3d 171, 2009-Ohio-2623, 909 N.E.2d 629, ¶ 24; *accord Disciplinary Counsel v. McAuliffe*, 121 Ohio St.3d 315, 2009-Ohio-1151, 903 N.E.2d 1209, ¶ 23. Once McNally entered his guilty plea, the factual basis for those charges was established and indisputable for purposes of this disciplinary proceeding. Those facts cannot be explained away by the parties or the board. *See Forbes* at ¶ 19; *Cincinnati Bar Assn. v. Powers*, 119 Ohio St.3d 473, 2008-Ohio-4785, 895 N.E.2d 172, ¶ 22.

{¶ 19} The panel described McNally as "contrite, candid and truthful" and also noted that his fax transmission had been "made premised upon a sincere belief in the lawfulness of the act." In addition, the panel noted that McNally's deposition testimony occurred in a "highly charged atmosphere," which the parties described

as a "political circus" with a "ten-year tortured history." The board further suggested that McNally's false testimony should be judged less harshly because it occurred during a cross-examination conducted by an assistant county prosecuting attorney who had served as McNally's own counsel in a separate but related lawsuit. And the parties agreed that members of the prosecuting attorney's office had approached a local newspaper with allegations that McNally had engaged in unethical conduct during the Oakhill acquisition.

{¶ 20} In support of the recommended sanction, the board cited three cases in which we publicly reprimanded public officials who had engaged in conduct that adversely reflected on their fitness to practice law by failing to make certain statutorily mandated financial disclosures. *See Disciplinary Counsel v. Costabile*, 143 Ohio St.3d 331, 2015-Ohio-2082, 37 N.E.3d 1197; *Disciplinary Counsel v. Gwinn*, 138 Ohio St.3d 167, 2014-Ohio-101, 4 N.E.3d 1039; and *Disciplinary Counsel v. Taft*, 112 Ohio St.3d 155, 2006-Ohio-6525, 858 N.E.2d 414. But none of those attorneys was found to have violated DR 1-102(A)(4) or Prof.Cond.R. 8.4(b). Nor did they attempt to diminish the seriousness of their conduct by submitting stipulations that challenge the factual foundation of their criminal convictions, as McNally has.

{¶ 21} In *Toledo Bar Assn. v. DeMarco*, 144 Ohio St.3d 248, 2015-Ohio-4549, 41 N.E.3d 1237, we suspended an attorney for one year with six months of the suspension stayed on conditions for making a series of material misrepresentations to a court. While that attorney had acted with a dishonest motive and initially denied making false statements, like McNally he had no prior discipline, ultimately demonstrated a cooperative attitude toward the disciplinary proceedings, and provided letters from judges and attorneys attesting to his good character and reputation. *Id*. at ¶ 9-10.

{¶ 22} Here, McNally pleaded guilty to and has been convicted of an attempt to disseminate through unlawful use of a telecommunications device

confidential information obtained in the course and scope of his role as an elected official. He has also pleaded guilty to and been convicted of giving false testimony in an official proceeding when the truth would have raised additional questions about his association with the Cafaro Company and, consequently, his motive for opposing the Oakhill acquisition. Thus, his false testimony was material. Moreover, McNally has stipulated that his conduct was dishonest, illegal, and adversely reflected on his trustworthiness. Given the seriousness of McNally's misconduct, the applicable aggravating and mitigating factors, and our precedent, we believe that a one-year suspension from the practice of law with six months stayed on one condition is the appropriate sanction in this case.

{¶ 23} Accordingly, John A. McNally IV is suspended from the practice of law in Ohio for one year, with six months of the suspension stayed on the condition that he engage in no further misconduct. If McNally fails to comply with the condition of the stay, the stay will be lifted and he will serve the full one-year suspension. Costs are taxed to McNally.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, and DEWINE, JJ., concur.

FISCHER and DEGENARO, JJ., not participating.

_____

Bonezzi Switzer Polito & Hupp Co., L.P.A., and David C. Comstock Jr., for relator.

Maro & Schoenike Co. and Lynn A. Maro, for respondent.

_____