[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. King,* Slip Opinion No. 2019-Ohio-4715.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4715

CLEVELAND METROPOLITAN BAR ASSOCIATION *v*. KING.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. King,* Slip Opinion No. 2019-Ohio-4715.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Indefinite suspension.*

(No. 2018-1762—Submitted May 21, 2019—Decided November 19, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-002.

_____

**Per Curiam.**

{¶ 1} Respondent, Matthew Joseph King, of Cleveland, Ohio, Attorney Registration No. 0067189, was admitted to the practice of law in Ohio in 1996. On July 18, 2016, we suspended King's license to practice law on an interim basis following his felony convictions for money laundering and attempted money laundering. *See In re King*, 146 Ohio St.3d 1272, 2016-Ohio-4985, 56 N.E.3d 979. On December 21, 2016, we imposed a separate stayed six-month suspension based

on King's failure to inform two clients that he did not carry professional-liability insurance and his failure to cooperate in the ensuing disciplinary investigation.[1] *Cleveland Metro. Bar Assn. v. King*, 148 Ohio St.3d 602, 2016-Ohio-8255, 71 N.E.3d 1082.

{¶ 2} In a complaint certified to the Board of Professional Conduct on January 13, 2017, relator, Cleveland Metropolitan Bar Association, charged King with multiple ethical violations arising from his felony money-laundering convictions. The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors, and relator agreed to withdraw four of the alleged rule violations. After considering those stipulations and the evidence adduced at a hearing before a panel of the board, the board issued a report finding that King committed the remaining charged misconduct and recommending that he be indefinitely suspended from the practice of law in Ohio. Relator objects to the board's recommended sanction and argues that King's conduct warrants permanent disbarment.

{¶ 3} For the reasons that follow, we overrule relator's objection, adopt the board's findings of fact and misconduct, and indefinitely suspend King from the practice of law.

**Misconduct**

{¶ 4} In February 2014, King engaged in a recorded conversation with a confidential informant for the Federal Bureau of Investigation ("FBI") and a regional law-enforcement task force. King told the informant, who was posing as a drug dealer, that he would form a corporation for the purpose of laundering money derived from the informant's profits in the drug trade. Shortly thereafter, King accepted $20,000 in marked bills from the informant and told the informant that he

---

1. The conduct that King was sanctioned for in 2016 occurred *after* the conduct at issue in this case.

would deposit the money into his client trust account in amounts less than $10,000 to avoid federal currency-reporting requirements.

{¶ 5} King never actually incorporated the proposed shell company or deposited the $20,000 in his client trust account. But over the next several weeks, he complied with the informant's multiple requests for cash. After King had returned the entire $20,000, he wrote and delivered two $2,000 checks to the informant from his personal account. The first check—made payable to the shell company that was never incorporated—was never cashed. The informant cashed the second check, which was payable to him, within several days of receiving it. According to King, the informant absconded with the $20,000 provided by the FBI and the $2,000 from King's personal checking account.

{¶ 6} King was charged with one count of attempted money laundering for accepting $20,000 that had been represented to be the proceeds of drug trafficking and two counts of money laundering for issuing the two $2,000 checks. He rejected a plea bargain that would have reduced his sentence and required him to surrender his law license, and a jury convicted him on all counts. King was sentenced to 44 months in prison, and his convictions were affirmed on appeal. King was released in August 2018 after serving just 22 months of his prison sentence. At the time of his disciplinary hearing, he was under house arrest at his mother's home in Cuyahoga County and anticipated that he would be released on December 14, 2018, to serve three years of supervised release.

{¶ 7} The parties stipulated and the board found that King's criminal conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and that his conduct is sufficiently egregious to support a separate finding that he violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice

law), *see Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21. We adopt these findings of fact and misconduct.

**Recommended Sanction**

{¶ 8} The parties stipulated that the following mitigating factors are present: King cooperated with relator's investigation following his release from prison, other penalties or sanctions have been imposed for his criminal conduct, and he has completed other interim rehabilitation—namely, a rigorous alcohol-and-drug treatment program. *See* Gov.Bar R. V(13)(C)(4), (6), and (8). In addition, the board found that King had submitted eight letters from attorneys, former clients, and others who have known him in a personal and professional capacity attesting to his good character and skills as a lawyer. *See* Gov.Bar R. V(13)(C)(5).

{¶ 9} At his disciplinary hearing, King testified at great length about his alcoholism and his success in completing—and in some instances leading—recovery programs during his incarceration. The parties also submitted stipulated exhibits documenting King's diagnoses with a psychological disorder and an alcohol-use disorder, treatment recommendations and summaries, and successful completion of a residential drug-treatment program in prison. King reported that in addition to struggling with debilitating bouts of drinking around the time of his criminal misconduct, he was dealing with his father's significant health problems, a difficult divorce, and his estrangement from his teenage daughter.

{¶ 10} King also presented the testimony of Cuyahoga County Common Pleas Court Judge Peter J. Corrigan, who met King in law school, had known him in a personal and professional capacity, and had served as King's Alcoholics Anonymous sponsor since March 2015. The board found that Judge Corrigan gave compelling testimony about King's past addiction and present sobriety, that the judge emphasized King's talent as an attorney and his ability to resume the practice of law, and that the judge corroborated King's testimony about the turmoil in his personal life around the time of his criminal conduct. Notwithstanding that

evidence, the board declined to accord mitigating effect to King's mental or alcohol-use disorders on the ground that he had not sufficiently demonstrated that either disorder was causally related to his misconduct, *see* Gov.Bar R. V(13)(C)(7).[2]   We also note that King has not submitted a prognosis from a qualified healthcare professional that he will be able to return to the competent and ethical professional practice of law.

{¶ 11} The parties stipulated and the board found that just one aggravating factor is present—King acted with a dishonest or selfish motive.  *See* Gov.Bar R. V(13)(B)(2).  Although King acknowledged that he was responsible for making poor decisions, the board characterized much of his testimony as "an attempt to explain why he should not have been [criminally] charged in the first place."  And the board recognized that the certified copy of King's entry of conviction conclusively established his guilt with respect to those offenses.  *See Mahoning Cty. Bar Assn. v. McNally*, 154 Ohio St.3d 292, 2018-Ohio-3719, 114 N.E.3d 147, ¶ 18.  Notably, however, the board did not interpret King's testimony as a refusal to acknowledge the wrongful nature of his conduct.  On the contrary, the board found that he had "whole-heartedly embrace[d] the wrongness of his conduct and accept[ed] that he should be sanctioned even if he believes there were technical flaws in the government's case."  Significantly, the board found that it was undisputed that although King laid out a plan to launder the money he had accepted from the informant, "he withdrew from the scheme before it was implemented."  The board also credited King for offering to assist the FBI in its effort to recover the funds stolen by the informant.

---

2. Gov.Bar R. V(13)(C)(7) provides that for a disorder to qualify as a mitigating factor, there must be (a) a diagnosis by a qualified healthcare professional, (b) a determination that the disorder contributed to the misconduct, (c) a sustained period of successful treatment, and (d) a prognosis from a qualified healthcare professional that the attorney will be able to return to the competent and ethical professional practice of law.

{¶ 12} At the conclusion of King's disciplinary hearing, he argued that a two-year suspension is the appropriate sanction for his misconduct. Relator, in contrast, argued that King's conduct warrants permanent disbarment because it involved funds that were purportedly derived from the sale of illegal drugs. Ultimately, the board recommended that King be indefinitely suspended from the practice of law with no credit for the time he has served under his interim felony suspension and that he be required to provide proof of his continued sobriety as a condition of his reinstatement.

## Relator's Objection

{¶ 13} Relator objects to the board's recommendation and argues that permanent disbarment is the appropriate sanction for a lawyer who engages in a scheme to launder the purported proceeds of illegal drug trafficking. Alternatively, relator argues that there is insufficient mitigating evidence to justify the imposition of a lesser sanction in this case.

{¶ 14} In recommending that King be indefinitely suspended from the practice of law, the board considered five cases propounded by relator. In two of those cases—*Disciplinary Counsel v. Williams*, 66 Ohio St.3d 71, 609 N.E.2d 149 (1993), and *Disciplinary Counsel v. Jones*, 66 Ohio St.3d 74, 609 N.E.2d 150 (1993)—we permanently disbarred partners of the same law firm who had pleaded guilty to single counts of conspiracy to launder more than $50,000 that they believed to be the proceeds of illegal drug sales. Jones and Williams had received more than $12,000 for their participation in the scheme. *Williams* at 72.

{¶ 15} In the three remaining cases, we indefinitely suspended attorneys convicted of similar financial crimes. In *Disciplinary Counsel v. Gittinger*, 125 Ohio St.3d 467, 2010-Ohio-1830, 929 N.E.2d 410, we indefinitely suspended a title-insurance agent convicted of conspiracy to commit bank fraud and money laundering for his role in falsifying real-estate closing documents to defraud federally insured financial institutions of more than $400,000. In *Disciplinary*

*Counsel v. Bennett*, 124 Ohio St.3d 314, 2010-Ohio-313, 921 N.E.2d 1064, we imposed an indefinite suspension on an attorney convicted of structuring financial transactions totaling approximately $125,000 to avoid federal reporting requirements for case transactions exceeding $10,000. And in *Cincinnati Bar Assn. v. Kellogg*, 126 Ohio St.3d 360, 2010-Ohio-3285, 933 N.E.2d 1085, we indefinitely suspended an attorney convicted of two counts of money laundering, two counts of conspiracy to commit money laundering, and two counts of conspiracy to obstruct proceedings before federal regulatory agencies. While serving as general counsel for a company owned by a childhood friend, Kellogg participated in a scheme to protect $14 million of the friend's assets from a Federal Trade Commission investigation and anticipated litigation.

{¶ 16} In this case, relator urges us to distinguish *Gittinger*, *Bennett*, and *Kellogg* and to permanently disbar King on the ground that King, like the attorneys in *Jones* and *Williams*, provided material assistance to drug dealers. But we have never before distinguished *Jones* and *Williams* on that ground. Furthermore, when imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 17} For example, in considering the appropriate sanction in *Kellogg*, we noted that although this court had previously disbarred attorneys who had engaged in money laundering and other financial crimes, we had not previously held that permanent disbarment is the presumptive sanction for money laundering. *Kellogg* at ¶ 18. And we acknowledged that even if there were such a presumption, it could be rebutted by sufficient mitigating evidence. *Id.* As aggravating factors, we found that Kellogg had acted with a dishonest or selfish motive and engaged in multiple offenses. But we found that those factors were outweighed by mitigating evidence that included (1) Kellogg's efforts to rectify the consequences of his misconduct, (2) his cooperation in the disciplinary proceeding, (3) evidence of his good

character and reputation, (4) the criminal sanctions imposed for his misconduct, (5) his acceptance of responsibility and expressed remorse, and (6) the assistance he provided to the bankruptcy trustee in the trustee's efforts to sell the company as a going concern. *Id.* at ¶ 15-16.

{¶ 18} Here, the board found just one aggravating factor and considered a significant amount of mitigating evidence. In addition to the mitigating factors identified above, the board found that Judge Corrigan gave compelling testimony that King was a talented attorney who made a horrible mistake, had taken significant steps to rehabilitate himself, and had the potential "to regain his license and use this experience to help other people." The board also credited King for his withdrawal from the money-laundering scheme before it was implemented. Indeed, despite King's representations to the informant that he would deposit the dirty money into his client trust account and incorporate a shell corporation to launder those funds, he took neither of those actions. He also rejected a plea agreement that had the potential to significantly reduce his criminal sentence because the agreement required him to surrender his law license.

{¶ 19} There is no doubt that King engaged in a serious crime that involved dishonesty, fraud, deceit, and misrepresentation or that his crime adversely reflects on his honesty, trustworthiness, and fitness to practice law. But based on the facts and significant mitigating evidence before us, we believe that King may be able to rehabilitate himself and once again establish that he possesses the requisite character, fitness, and moral qualifications to practice law. We therefore overrule relator's objection and adopt the board's recommended sanction.

{¶ 20} Accordingly, Matthew Joseph King is indefinitely suspended from the practice of law with no credit for the time he has served under his interim felony suspension. In addition to the requirements set forth in Gov.Bar R. V(25), upon petitioning this court for reinstatement to the practice of law, King shall be required

to demonstrate he has completed the term of supervised release imposed in his underlying criminal case.  Costs are taxed to King.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, POWELL, and STEWART, JJ., concur.

STEPHEN W. POWELL, J., of the Twelfth District Court of Appeals, sitting for DONNELLY, J.

_____

Shapero & Green, L.L.C., Brian Green, and Michael I. Shapero; and Heather M. Zirke, Bar Counsel, and Kari L. Burns, Assistant Bar Counsel, for relator.

Law Office of Matthew D. Golish, L.L.C., and Matthew Golish, for respondent.

_____