[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 565.]

WARREN COUNTY BAR ASSOCIATION *v*. WEST.

[Cite as *Warren Cty. Bar Assn*. v. *West*, 1995-Ohio-333.]

*Attorneys at law—Misconduct—Two-year suspension, with one year suspended on condition of continued compliance with Ohio Lawyers Assistance Program, Inc. and credit for the interim suspension—Conviction of carrying a concealed weapon.*

(No. 95-797—Submitted May 23, 1995—Decided August 30, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-65.

_____

{¶ 1} Relator, Warren County Bar Association, charged respondent, Richard E. West of Franklin, Ohio, Attorney Registration No. 0033319, with having violated, *inter alia*, DR 1-102(A)(6) (conduct that adversely reflects on fitness to practice law). Respondent answered the complaint, admitting many of the factual allegations and that he had violated the cited Disciplinary Rule. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on February 6, 1995.

{¶ 2} Evidence, stipulations, and a supplemental answer submitted for the panel's review established that respondent became intoxicated at his office on May 24, 1993, after his fiancée (now, his wife) told him that she was ending their relationship. While speaking with her on the telephone, respondent threatened suicide with a client's gun that had been returned to him by court order. His fiancée alerted respondent's mother, who immediately went to his office to reason with him. When his mother arrived, respondent called the police and asked for assistance in removing her as a trespasser on his property. Two officers responded, and they were met by respondent's father, who confirmed that his wife and son

were arguing inside the building in which respondent's office was located and that his son had a gun. Respondent then came to the back door of the building, holding on to his mother's arm with one hand and brandishing a gun with the other. Respondent's mother was able to escape his grasp and run away. However, for the next hour or two, respondent continued to waive the gun and shout obscenities through open windows or doors of the building, even after back-up officers arrived. He told the officers to leave his property, he threatened to sue them, and then he threatened to shoot them if they did not comply. He even called a local common pleas judge during the course of this incident to lodge more threats. At one point, respondent stepped outside his office building and discharged his gun, but without shooting anyone.

{¶ 3} Respondent eventually left his office building and got behind the wheel of a police cruiser parked close to the entrance. He backed the car toward another parked cruiser that police officers were using to shield themselves. Respondent got out of the car and walked to the other cruiser, still waiving the gun in his hand. Finally, one of the officers persuaded him to put the gun down, and respondent was taken into custody and to the hospital.

{¶ 4} At the hospital, respondent was diagnosed as suffering from acute alcohol intoxication and as alcohol dependent. He was subsequently charged with numerous offenses, but pled guilty and was convicted only of carrying a concealed weapon in violation of R.C. 2923.12. On June 3, 1994, he was sentenced to eighteen months' confinement, fined $5,000, and ordered to pay the costs for the police officers' response on May 24, 1993. Respondent's sentence was suspended and, after spending several days in the county jail, he was placed on a five-year probation period, a condition of which required his continuing treatment for alcohol and/or drug addiction. On July 1, 1994, he was suspended from the practice of law pursuant to Gov.Bar R. V(5)(A) (interim suspension for conviction of a felony). See (1994), 69 Ohio St.3d 1485, 635 N.E.2d 40 (case No. 94-1204).

2

{¶ 5} Based on this evidence, the panel determined that respondent had violated DR 1-102(A)(6). In recommending a sanction for this misconduct, the panel considered respondent's efforts to recover from alcoholism.

{¶ 6} Respondent entered the Shephard Hill Treatment Program in Newark, Ohio, on August 11, 1993 and completed the program on October 15, 1993. He reported at the panel hearing that he had maintained sobriety since that time. On October 23 or 29, 1993, respondent became a participant in the Ohio Lawyer's Support System, now, the Ohio Lawyers Assistance Program, Inc. ("OLAP"). He also continued his treatment by attending Horizans Outpatient Recovery Program for eleven months.

{¶ 7} Dr. Richard Pelham, the Clinical Director for OLAP, testified to respondent's success in the program and his confidence in respondent's continued recovery. Respondent remains under an OLAP contract until 1996, at a minimum, that requires him to abstain from alcohol and mood-altering drugs except as prescribed by a physician or psychiatrist in consultation with Dr. Pelham, to attend three Alcoholics Anonymous/ Narcotics Anonymous meetings per week, to maintain regular contact with his assigned lawyer monitor, and to submit to the OLAP's random testing procedures. Respondent has enthusiastically cooperated with the terms of this contract, including having received negative test results at least thirty times. He has also assisted others seeking recovery through Alcoholics Anonymous, and he is now serving by appointment on the Ohio State Bar Association's Lawyers Assistance Committee.

{¶ 8} The panel also considered the testimony of seven witnesses and twenty-three letters from respondent's friends and professional acquaintances. All described respondent's competence and integrity as a practitioner.

{¶ 9} Relator recommended that respondent receive a two-year suspension from the practice of law for his misconduct, with credit to be given for the suspension of his license on July 1, 1994. Respondent recommended a one-year

suspension with credit given for the July 1, 1994 interim suspension and a stay of any remaining part of that year, plus a two-year probation period during which respondent would be required to continue compliance with his OLAP contract. The panel recommended that respondent's license be suspended for two years, that one year of this sanction be suspended, and that he be placed on probation contingent on his continued compliance with OLAP requirements. The panel further recommended that respondent receive credit for the interim suspension of his license.

{¶ 10} The board adopted the panel's report, including its findings of fact, conclusions of law and recommendation.

_____

*Dunlap & Dunlap* and *Anne E. Krehbiel*; *Rittgers & Mengle and John S. Mengle*, for relator.

*Charles W. Kettlewell*, for respondent.

_____

**Per Curiam.**

{¶ 11} Upon review of the record, we concur in the board's finding that respondent violated DR 1-102(A)(6) and in the recommended sanction. Respondent is therefore suspended from the practice of law for two years; however, we suspend one year of this period on the condition of his continued compliance with OLAP requirements, and we allow credit for the time during which respondent's license has already been suspended. Respondent is placed on probation and may apply to terminate probation pursuant to Gov.Bar R.V(9)(D) on or after July 1, 1996. Moreover, thirty days from the date of this judgment, respondent shall file with the Clerk of this court evidence demonstrating that he is in compliance with Gov. Bar R. X(3)(F), as ordered in our judgment in case No. 94-1204.

*Judgment accordingly*.

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____