[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Hoover*, Slip Opinion No. 2022-Ohio-769.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-769

DISCIPLINARY COUNSEL *v*. HOOVER.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Hoover*, Slip Opinion No. 2022-Ohio-769.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including engaging in conduct that adversely reflects on a lawyer's fitness to practice law—Two-year suspension with credit for the time served under interim felony suspension.*

(No. 2021-1517—Submitted January 25, 2022—Decided March 17, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2021-013.

_____

**Per Curiam.**

{¶ 1} Respondent, Robert Tracy Hoover, of Portsmouth, Ohio, Attorney Registration No. 0039610, was admitted to the practice of law in Ohio in 1988. On October 5, 2020, we suspended his license on an interim basis following his

conviction on a felony count of burglary. That suspension remains in effect. *See In re Hoover*, 161 Ohio St.3d 1268, 2020-Ohio-4774, 164 N.E.3d 496.

{¶ 2} In a May 2021 complaint, relator, disciplinary counsel, charged Hoover with a single violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on a lawyer's fitness to practice law) arising from Hoover's armed confrontation with a tenant and a subsequent social-media post disparaging the judge who arraigned him on the criminal charges stemming from that incident.

{¶ 3} The parties entered into stipulations of fact and misconduct and submitted stipulated exhibits. Hoover testified at a hearing conducted by a three-member panel of the Board of Professional Conduct. Based on the stipulations and the evidence presented at the hearing, the panel and the board found that Hoover had committed the charged misconduct. After weighing the aggravating and mitigating factors and our precedent, the panel and board recommend that we suspend Hoover from the practice of law for two years, that he receive credit for the time served under his interim felony suspension, and that certain conditions be placed on his reinstatement to the profession. For the reasons that follow, we adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

{¶ 4} In 1996, Hoover inherited 15 acres of land in West Portsmouth, Ohio, known as Careys Run. There are seven rental units on the Careys Run property that Hoover's son is responsible for leasing. Although Hoover does not reside at Careys Run, he maintains several garages on the property where he stores and repairs vehicles.

{¶ 5} In 2001, Hoover was diagnosed with bipolar disorder. At his disciplinary hearing, Hoover admitted that despite his diagnosis, he had refused to take any medication between 2001 and 2019.

{¶ 6} During the summer of 2019, Hoover met Jason Pelfrey while Hoover was working in one of his Careys Run garages. Hoover asked Pelfrey why he was on the property, and Pelfrey informed him that he was renting an apartment from Hoover's son.

{¶ 7} On October 28, 2019, Hoover noticed that someone had accessed the buildings on the Careys Run property, but he did not believe that anyone was authorized to be there. Hoover retrieved his 12-gauge shotgun from one of the garages and began investigating each building, shouting for anyone present to identify themselves. Hoover identified each person he met as a current tenant or a guest of a tenant until he encountered Pelfrey.

{¶ 8} Pelfrey was on the stoop of his second-floor apartment, which was located above a garage that Hoover used for storage. Hoover stood on the ground outside Pelfrey's apartment with his shotgun in his hand and demanded that Pelfrey identify himself. He then accused Pelfrey of breaking into buildings and not paying rent and told him to leave the premises. After Pelfrey refused to leave and locked himself inside the apartment, Hoover entered the garage underneath Pelfrey's apartment and turned off the electricity. Hoover continued to tell Pelfrey that he had a gun and that Pelfrey needed to leave.

{¶ 9} Pelfrey connected to a neighbor's wireless internet network and called the Scioto County Sheriff's Office. The call lasted approximately 90 seconds. Meanwhile, Hoover remained outside holding the shotgun and continued to demand that Pelfrey leave the premises. Five minutes later, Pelfrey placed another call to the sheriff's office and remained on the line until the sheriff arrived 11 minutes later. In the interim, Pelfrey continued to argue with Hoover, who again announced that he had a gun and threatened to shoot him. Hoover eventually placed his shotgun in the garage and grabbed a baseball bat. He then climbed the stairs to Pelfrey's apartment and shattered a sliding glass door while continuing to demand that Pelfrey exit the premises—but Pelfrey refused to leave. At his disciplinary

hearing, Hoover testified that he had believed Pelfrey would not be able to stay in the apartment if he broke the glass door.

{¶ 10} When the sheriff arrived at the scene, Hoover approached him with the baseball bat, but he complied with the sheriff's order to drop the bat. The sheriff arrested Hoover and transported him to the county jail.

{¶ 11} The next day, Judge Steven Mowery of the Portsmouth Municipal Court arraigned Hoover and set his bond at $100,000. Hoover posted bond and was transferred to The Ohio State University Wexner Medical Center's Harding Hospital, which provides comprehensive behavioral-health services. There, physicians determined that Hoover was experiencing a severe manic episode caused by his bipolar disorder. He remained there for approximately two weeks before being discharged.

{¶ 12} In December 2019, a Scioto County grand jury indicted Hoover on two first-degree felony counts of aggravated burglary with firearm specifications and a first-degree misdemeanor count of aggravated menacing. *State v. Hoover*, Scioto C.P. No. 19CR001195 (Dec. 20, 2019). On March 2, 2020, Hoover posted a message about Judge Mowery on Facebook, stating, "Hey Steve Mowry u crooked punk your father would puke if he knew what u did to me He would be so disappointed that u draw breath." The judge was a friend of Hoover's family, but in his continuing manic state, Hoover blamed the judge for the criminal charges pending against him.

{¶ 13} On March 3, Hoover failed to appear for a hearing and the court issued a warrant for his arrest. The next day, he was arrested in Daytona Beach, Florida, and held under a mental health lockdown in Volusia County, Florida, until he was extradited to Scioto County, Ohio, on or about March 25. The state requested an evaluation to determine whether Hoover was competent to stand trial. The parties to that proceeding stipulated to the admissibility of the resulting competency report, which found that Hoover was not competent to stand trial. In

May 2020, the court ordered that Hoover be transferred to and involuntarily held at the Appalachian Behavioral Healthcare Center ("ABH") and that he undergo treatment to restore his competency. In June 2020, the court granted ABH's petition to involuntarily medicate Hoover because he refused to take medication to treat his bipolar disorder. At his disciplinary hearing, Hoover admitted he had refused to take prescribed medication before the judge issued that order because he did not believe he was ill.

{¶ 14} Hoover remained hospitalized until September 11, 2020, when the court accepted a psychologist's report and declared that Hoover's competency had been restored. That same day, Hoover pleaded guilty to one third-degree felony count of burglary and a first-degree misdemeanor charge of aggravated menacing. On October 14, 2020, the court dismissed the remaining charges and sentenced Hoover to three years of intensive community control and ordered him to remain in counseling and to take his prescribed medication. If Hoover violates the conditions of his community control, the court may impose a prison term of up to 24 months.

{¶ 15} The board found and we agree that Hoover's conduct adversely reflected on his fitness to practice law in violation of Prof.Cond.R. 8.4(h).

### Recommended Sanction

{¶ 16} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 17} The parties stipulated that there are no aggravating factors and five mitigating factors present in this case. Hoover has no prior disciplinary record, made full and free disclosure to the board, and exhibited a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(1) and (4). Hoover presented letters from a judge (who is also his brother-in-law), two clients, a former police captain, his chief probation officer, and several community members—all

attesting to his good character and reputation. Two of the authors described Hoover as one of the best trial attorneys—if not the best—they had ever witnessed. The board stated, "It is evident from the letters that [Hoover] exemplified competence, professionalism, and the highest standards of personal character as an attorney, but perhaps more importantly, that he truly cares about his clients and has had a profound impact on their lives, regardless of the outcome of the cases he handled for them." Despite the incident that interrupted Hoover's career and precipitated this disciplinary matter, the board found that his good character and reputation have remained intact.

{¶ 18} Hoover also had other penalties or sanctions imposed as the result of his misconduct. *See* Gov.Bar R. V(13)(C)(6). At the time of his disciplinary hearing, the interim suspension of his license had been in effect for more than one year. He had spent more than six months in lockdown facilities of one type or another between his arrest in October 2019 and the restoration of his competency in September 2020. He has also been under intensive community control since October 2020.

{¶ 19} Hoover has also established the existence of a mitigating disorder. *See* Gov.Bar R. V(13)(C)(7). He submitted extensive psychiatric and counseling records, letters and treatment notes from his counselor, and a letter from his treating psychiatrist, which establish that he has been diagnosed with Bipolar I Disorder and that a severe manic episode contributed to his misconduct. His treating professionals confirmed that he has experienced a sustained period of successful, post-hospitalization treatment and opined that with continued treatment, he will be able to resume the competent, ethical, and professional practice of law.

{¶ 20} In addition, the board found that Hoover had accepted full responsibility and demonstrated sincere remorse for his misconduct. Hoover testified that he has a strong support system including supportive and readily accessible medical providers and close and loving family members who are

determined to ensure that he adheres to his treatment regimen. He is highly motivated to return to the profession that he loves and to work with his sons, both of whom are pursuing legal careers.

{¶ 21} The parties jointly recommended and the board agreed that the appropriate sanction for Hoover's misconduct is a two-year suspension with credit for the time served under the interim felony suspension. The parties further recommend that we place conditions on Hoover's reinstatement to ensure that he is mentally fit to resume the practice of law and continues to comply with his treatment regimen and community-control requirements.

{¶ 22} In support of that sanction, the parties and the board relied primarily upon *Disciplinary Counsel v. Howard*, 123 Ohio St.3d 97, 2009-Ohio-4173, 914 N.E.2d 377, and *Disciplinary Counsel v. Whitfield*, 132 Ohio St.3d 284, 2012-Ohio-2708, 971 N.E.2d 915.

{¶ 23} Howard pleaded guilty to and was convicted of assault with a deadly weapon and inducing panic—felonies of the second and fifth degree. *Howard* at ¶ 5. Those pleas and convictions arose from an incident in which a Dayton police officer entered Howard's backyard in a high-crime neighborhood at night to investigate what the officer thought might be a stolen vehicle. *Id.* at ¶ 6. Howard awoke to a searchlight shining in his window. *Id.* at ¶ 7, 16. Unable to see anyone and intending to frighten whoever was in his backyard, Howard opened the window and fired a gun twice. *Id.* at ¶ 7-8. Howard was arrested after a standoff that lasted several hours. *Id.* at ¶ 10.

{¶ 24} In addition to finding that Howard's conduct adversely reflected on his fitness to practice law, we found that it constituted illegal conduct involving moral turpitude. *Id.* at ¶ 3, 13. Like Hoover, Howard had practiced law for approximately 30 years with no prior discipline, was cooperative during the ensuing disciplinary proceedings, acknowledged his wrongdoing, had other sanctions imposed for his misconduct, and presented evidence of his good character and

reputation. *Id*. at ¶ 15. Although Howard did not offer proof of a mitigating mental disorder, he agreed to comply with any conditions of reinstatement—including a requirement that he submit to a mental-health evaluation. *Id.* at ¶ 20.

{¶ 25} We suspended Howard from the practice of law for two years, with credit for the time he served under his interim felony suspension and conditioned his reinstatement on the submission of proof to a reasonable degree of psychological certainty that he was able to return to the competent, ethical, and professional practice of law. *Id*. at ¶ 25.

{¶ 26} Whitfield pleaded guilty to and was convicted of aggravated assault, a fourth-degree felony for hitting another man in the head with a glass bottle and seriously injuring him during a bar fight. *Whitfield*, 132 Ohio St.3d 284, 2012-Ohio-2708, 971 N.E.2d 915, at ¶ 5. In addition to finding that his criminal conduct violated Prof.Cond.R. 8.4(h), we also found that he engaged in the practice of law by entering an appearance and signing several documents filed in court in a jurisdiction where he was not licensed. *Id.* at ¶ 6-7. The single aggravating factor of physical harm to the victim in that case was balanced against the mitigating effects of Whitfield's clean disciplinary record, the absence of a dishonest or selfish motive, his full and free disclosure and cooperative attitude throughout the disciplinary proceeding, and the imposition of other penalties for his conduct. *Id.* at ¶ 9-11. At the relator's request, Whitfield also submitted to Ohio Lawyers Assistance Program ("OLAP") mental-health and substance-abuse evaluations. *Id*. at ¶ 10. We suspended Whitfield from the practice of law for two years but credited him for the time served under his interim felony suspension. Although his diagnosed mental disorders were not shown to have contributed to his misconduct, we also required Whitfield to extend and remain in compliance with his OLAP contract for the duration of his suspension. *Id*.

{¶ 27} Guided by our reasoning in *Butler Cty. Bar Assn. v. Blauvelt*, 160 Ohio St.3d 333, 2020-Ohio-3325, 156 N.E.3d 891, the board was convinced that

the two-year suspension with credit for time served and conditions for reinstatement recommended by the parties is the appropriate sanction in this case. Blauvelt pleaded guilty to charges of public indecency and reckless operation of a vehicle for masturbating while driving naked. We found that his convictions on those charges violated Prof.Cond.R. 8.4(h) and adopted the board's recommendation that he be suspended for two years and that the entire suspension be stayed on the conditions that, among other things, he comply with his OLAP contract and the treatment plan prescribed by his mental-health practitioners, undergo a chemical-dependency evaluation, abstain from the use of alcohol, and serve a five-year term of monitored probation to ensure compliance with his treatment and recovery protocol.

{¶ 28} In sanctioning Blauvelt, we acknowledged that the primary goal of attorney discipline proceedings is not to punish the lawyer but to protect the public. *Id.* at ¶ 20, citing *Disciplinary Counsel v. Corner*, 160 Ohio St.3d 104, 2020-Ohio-961, 154 N.E.3d 23, ¶ 21, and *Toledo Bar Assn. v. Hales*, 120 Ohio St.3d 340, 2008-Ohio-6201, 899 N.E.2d 130, ¶ 21. We further explained that " 'we tailor the conditions for staying a suspension to the causes of the attorney's misconduct.' " *Id.* at ¶ 20, quoting *Disciplinary Counsel v. Oberholtzer*, 136 Ohio St.3d 314, 2013-Ohio-3706, 995 N.E.2d 217, ¶ 35. Having considered those purposes and the unique circumstances of Blauvelt's case, we determined that the board's recommended sanction and the conditions contained therein were properly tailored to address the causes of his misconduct and to ensure that he adhered to his treatment regimens. *Id.* at ¶ 20.

{¶ 29} In this case, citing Hoover's inability to recognize and acknowledge his illness during manic episodes and his history of refusing to take prescribed medications in the absence of a court order, the board determined that the conditions for reinstatement recommended by the parties are necessary and properly tailored to protect the public, address the causes of Hoover's misconduct,

and ensure that he adheres to his treatment regimen. Having reviewed the record in this case and our precedent, we agree with the board's assessment.

**Conclusion**

{¶ 30} Accordingly, Robert Tracy Hoover is suspended from the practice of law for two years with credit for the time served under his October 5, 2020 interim felony suspension. In addition to the requirements of Gov.Bar R. V(24), Hoover's reinstatement shall be conditioned on the submission of proof that he (1) is in full compliance with all terms and conditions of the community control imposed in Scioto C.P. No. 19CR001195, (2) has submitted to a full psychological assessment conducted by OLAP and complied with all recommendations resulting therefrom, and (3) has entered into an OLAP contract for a duration to be determined by OLAP and is in full compliance with that contract. In addition, he shall be required to submit an opinion from his treating psychiatrist stating that he is able to return to the competent, ethical, and professional practice of law. Costs are taxed to Hoover.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Adam P. Bessler and Michelle R. Bowman, Assistant Disciplinary Counsel, for relator.

Marie Hoover, for respondent.

_____