**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. McClain*, **Slip Opinion No. 2024-Ohio-5197.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5197

DISCIPLINARY COUNSEL *v.* MCCLAIN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. McClain*, Slip Opinion No. 2024-Ohio-5197.]**

*Attorneys—Misconduct—Criminal conduct—Conduct that adversely reflects on the lawyer's fitness to practice law—Two-year suspension with credit for time served under an interim felony suspension.*

(No. 2024-0848—Submitted July 23, 2024—Decided November 1, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-038.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, DONNELLY, STEWART, EDELSTEIN, and DETERS, JJ. KENNEDY, C.J., concurred in part and dissented in part and would not award credit for time served under the interim felony suspension. CARLY M. EDELSTEIN, J., of the Tenth District Court of Appeals, sitting for BRUNNER, J.

**Per Curiam.**

{¶ 1} Respondent, William Allen McClain, of Franklin, Ohio, Attorney Registration No. 0082054, was admitted to the practice of law in Ohio in 2007.

{¶ 2} On March 15, 2023, we suspended McClain from the practice of law on an interim basis following his February 2023 convictions for two counts of aggravated assault, felonies of the fourth degree, and one count of inducing panic, a felony of the fifth degree. *In re McClain*, 2023-Ohio-790. The convictions arose from an incident in which McClain, after an evening of drinking with his girlfriend and others, became heavily intoxicated, displayed aggressive and violent behavior, and discharged a firearm. The incident ended with McClain's arrest.

{¶ 3} In a November 2023 complaint, relator, disciplinary counsel, charged McClain with a single violation of Prof.Cond.R. 8.4(h) (conduct that adversely reflects on the lawyer's fitness to practice law) arising from his conduct and the resulting convictions.

{¶ 4} The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors. They also submitted 17 stipulated exhibits. A three-member panel of the Board of Professional Conduct conducted a hearing at which it heard McClain's testimony. The panel issued a report finding that McClain committed the charged misconduct and recommending that he be suspended from the practice of law for two years, with credit for the time he has served under the March 15, 2023 interim felony suspension. The panel also recommended that McClain's reinstatement be conditioned on his (1) complying with the terms of his criminal sentence, including his three-year period of community control, (2) complying with the terms of his three-year Ohio Lawyers Assistance Program ("OLAP") contract, (3) complying with the terms of an agreed entry from his divorce case, (4) complying with the treatment recommendations of his mental-health professionals, and (5) submitting proof from a qualified

healthcare professional that McClain can return to the competent, ethical, and professional practice of law. The board adopted the panel's findings of fact and misconduct and its recommended sanction. No objections have been filed.

{¶ 5} After a review of the record, we adopt the board's findings of misconduct and its recommended sanction.

## FINDINGS OF FACT AND MISCONDUCT

{¶ 6} Before the events giving rise to this matter, McClain was a Judge Advocate General and chief of the Labor and Employment Law Division of the Office of the Staff Judge Advocate in the 88th Air Base Wing at Wright Patterson Air Force Base. In that capacity, he provided legal support to officers, enlisted airmen, Air Force civilians, contract employees, and military retirees.

{¶ 7} The relevant facts took place on Saturday evening, October 29, 2022, and early the next morning. McClain and his girlfriend (now fiancée), Jennifer Miller, were at a bar, along with Miller's adult daughter, Brianne Cash, and Cash's friends Marissa Wallace and Destiny Oakes (now known as Destiny Benton). At some point, McClain, who was intoxicated, became aggravated and belligerent. The group decided to leave the bar, and McClain walked off into the parking lot.

{¶ 8} When Miller and Benton approached McClain to convince him to leave with them, McClain assaulted Miller. Benton came to Miller's defense, and McClain attempted to kick Benton. Because of McClain's actions, the four women left the bar without him.

{¶ 9} The women eventually returned to McClain's home, where McClain and Miller lived. The women decided to hide or remove the numerous guns that McClain kept in the house, given his conduct earlier that night, his level of intoxication, and his impending return. As Miller was coming from upstairs to notify the others that she had found one of the guns, McClain appeared.

{¶ 10} McClain became enraged, smashed a bottle in the kitchen, and threw miscellaneous items around the house. A melee ensued. McClain shoved Cash to

the ground, and the other women intervened.  In the chaos, Cash grabbed a kitchen knife and stabbed McClain in his torso.

{¶ 11} The four women left the house and ran into the surrounding neighborhood.  McClain pursued them with a gun.  At least one of the women knocked on doors and rang doorbells of neighboring homes, triggering doorbell security cameras to record.  McClain caught Miller and Cash, pointed his gun at them, and held them at point-blank range.  As they begged him not to shoot, McClain attempted to grab and kick at them.  McClain then lost his footing and fell.  McClain fired one shot into the air and returned home.

{¶ 12} A neighbor camping in his backyard with his wife and children that night was awakened by sounds of chaos.  He moved his family to safety and called 9-1-1.  Police arrived, followed by the Warren Tactical Response Unit ("TRU"), a special-weapons-and-tactics team ("SWAT").  McClain held himself inside the home, where he had access to numerous guns, for several hours.  After failed attempts to negotiate a surrender, the Warren TRU deployed gas canisters through the residence's windows.  Thirty minutes later, McClain surrendered and was taken into custody.

{¶ 13} On January 4, 2023, McClain executed a waiver of indictment acknowledging that he would be charged with:

- two counts of aggravated assault, fourth-degree felonies, in violation of R.C. 2903.12(A)(2) and 2903.12(B), with firearm specifications;

- one count of domestic violence, a first-degree misdemeanor, in violation of R.C. 2919.25(A) and 2919.25(D)(2);

- two counts of assault, first-degree misdemeanors, in violation of R.C. 2903.13(A) and 2903.13(C);

- one count of inducing panic, a fifth-degree felony, in violation of R.C. 2917.31(A)(3) and 2917.31(C)(4)(a), with a firearm specification; and

4

- one count of using weapons while intoxicated, a first-degree misdemeanor, in violation of R.C. 2923.15(A) and 2923.15(B).

The same day, McClain pleaded guilty to all charges. At McClain's sentencing on February 22, 2023, the court ordered McClain to:

- serve three years of community control on basic probation;
- serve 100 hours of community service;
- undergo mental-health and drug/alcohol-abuse counseling;
- not contact Cash, Wallace, and Benton;
- forfeit seven firearms;
- pay court costs; and
- pay $649 in restitution to Wallace.

{¶ 14} In McClain's disciplinary case, the parties stipulated and the board found that McClain's illegal conduct adversely reflects on his fitness to practice law, in violation of Prof.Cond.R. 8.4(h).

## SANCTION

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} In terms of aggravating factors, the parties stipulated and the board found that McClain committed multiple offenses. *See* Gov.Bar R. V(13)(B)(4). In addition, the parties stipulated and the board found six mitigating factors. McClain lacked a prior disciplinary record, *see* Gov.Bar R. V(13)(C)(1), he lacked a dishonest or selfish motive, *see* Gov.Bar R. V(13)(C)(2), and he made full and free disclosure to the board and exhibited a cooperative attitude toward the proceedings, *see* Gov.Bar R. V(13)(C)(4). He also presented evidence of good character or reputation, *see* Gov.Bar R. V(13)(C)(5), he had other penalties or sanctions

imposed, *see* Gov.Bar R. V(13)(C)(6), and he underwent other interim rehabilitation, *see* Gov.Bar R. V(13)(C)(8). The board also found mitigating McClain's acceptance of responsibility for misconduct and his acknowledgement of his wrongdoing, and it noted the rehabilitative efforts McClain has undertaken to address his mental-health and substance-abuse issues.

{¶ 17} During relator's investigation into this matter, McClain provided relator with evidence of some of the measures he has taken in response to the underlying incident. This evidence includes two letters from the University of Cincinnati Lindner Center of Hope, one verifying his diagnoses of severe alcohol-use disorder, depression, anxiety, and posttraumatic stress disorder, stating that McClain completed an intensive outpatient program. The clinical director of the program said that McClain was "looked upon as a leader by his peers" and "was a pleasure to have in group." McClain also provided a letter from the United States Department of Veterans Affairs verifying McClain's completion of a course in cognitive behavioral therapy for depression. In addition, McClain has been attending Alcoholics Anonymous ("AA") meetings and provided his AA attendance sheets from December 2022 to March 2024.

{¶ 18} McClain has also been subject to and complied with certain conditions separate from his criminal sentence. In a July 2023 court filing, McClain agreed to participate in the Soberlink Program. That program required McClain to provide a breath sample for alcohol testing before, during, and after visiting with his children. McClain has never tested positive for alcohol under this program. The agreed entry also requires McClain to provide proof three times per year that he is continuing the mental-health treatment recommended by care providers.

{¶ 19} As evidence of McClain's good character and reputation, four letters were provided. Darryl Brown, who currently serves as the senior supervising attorney in the 88th Air Base Wing Legal Office, wrote that McClain is a highly respected person and professional, that he has endured challenging life events, and

that he has extreme regret and remorse for his offenses. Lieutenant Colonel Christopher Stallkamp, the Staff Judge Advocate for the 179th Airlift Wing in Mansfield, Ohio, wrote that McClain's conduct during the underlying incident was out of character and that he typically has a "clear headed calming presence." Polly Sandness, a United States Air Force Colonel, wrote that she has known and respected McClain since 2014, that he has a "calm head" and "warm heart," and that he has the fortitude and character to grow from every experience. Finally, Colonel Teresa Edwards, Esq., Air National Guard Assistant to the Air Combat Command Staff Judge Advocate at Langley Air Force Base, Virginia, wrote that McClain was the "consummate professional attorney and military leader" and that his misconduct was completely out of character for him.

{¶ 20} The board concluded that the incident in this case was caused by McClain's excessive consumption of alcohol and untreated mental-health issues and that McClain, "when sober, is a respectful and compassionate person, a loving father, and a hardworking and talented attorney." The board also acknowledged that McClain has served the United States honorably since age 18, including three six-month deployments overseas.

{¶ 21} As part of McClain's recovery, he entered into a three-year contract with OLAP in December 2022 and he has stayed sober since the date of the underlying incident.

{¶ 22} In reaching its recommended sanction, the board relied on four cases. In *Warren Cty. Bar Assn. v. West*, 1995-Ohio-333, the attorney became intoxicated at his office and threatened suicide. His mother arrived, as did others and the police. At one point, the attorney emerged from the building holding his mother's arm with one hand while waiving a gun with the other. His mother was able to escape her son's grasp. He also made threats to the police, and at one point discharged his gun, although no one was shot. Eventually, the attorney got behind the wheel of a police cruiser and backed it toward another cruiser. He exited that vehicle, still waving

the gun, until eventually one officer persuaded him to put the gun down. The attorney pleaded guilty to carrying a concealed weapon, a felony.

{¶ 23} While our opinion mentioned no aggravating or mitigating factors, the attorney had entered into a treatment program, participated in OLAP, and submitted testimony in support of his competence and integrity as a practitioner. *Id.* at ¶ 6. We determined that the attorney violated a former disciplinary rule equivalent to Prof.Cond.R. 8.4(h)—engaging in conduct that adversely reflects on an attorney's fitness to practice law—and suspended him from the practice of law for two years, with one year of the suspension stayed on conditions and with credit given for the time he had served under an interim felony suspension. *Id.* at ¶ 11.

{¶ 24} In *Disciplinary Counsel v. Howard*, 2009-Ohio-4173, a police officer was outside the attorney's home investigating a stolen vehicle. In doing so, the officer shined a searchlight through his window. In response, the attorney filed multiple shots at the officer from his home. This action culminated in a standoff with the police and ended when a SWAT team fired tear gas into the home and forced the attorney out of the house. The attorney pleaded guilty to assault with a deadly weapon, a felony of the second degree, and inducing panic, a felony of the fifth degree.

{¶ 25} The board found mitigating that the attorney had practiced law for nearly 30 years with no discipline, that he had cooperated during the disciplinary proceedings, that he had acknowledged his conduct and convictions, that other fines and penalties had been imposed, and that he had presented evidence of good character and reputation. *Id.* at ¶ 15. The board found that the aggravating circumstances overwhelmed any mitigation because the attorney had "twice shot a loaded handgun at a uniformed police officer at close range." *Id.* at ¶ 16. Having suspended the attorney's law license on an interim basis, we determined that he had committed two violations of the disciplinary rules, including a violation of today's equivalent of Prof.Cond.R. 8.4(h), and we suspended him from the practice of law

for two years with credit for the time he had served under his interim felony suspension and with conditions on his readmission. *Id.* at ¶ 3, 22, 24.

{¶ 26} In *Disciplinary Counsel v. Whitfield*, 2012-Ohio-2708, the attorney was in an altercation with another man at a bar and hit him with a glass bottle, causing glass to lodge in the victim's eye, among other injuries. The attorney pleaded guilty to one count of aggravated assault, a fourth-degree felony. In addition, he had practiced law in Kentucky without being licensed there.

{¶ 27} In mitigation, the board found no prior discipline, no dishonest or selfish motive, the imposition of other penalties and sanctions, and full and free disclosure and a cooperative attitude during the disciplinary proceedings. *Id.* at ¶ 9-10. We considered physical harm to the victim as an aggravating factor. *Id.* at ¶ 11. After suspending the attorney's law license on an interim basis, we determined that he violated Prof.Cond.R. 8.4(h) and 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction) and suspended him from the practice of law for two years, with credit for the time he had served under his interim suspension. *Id.* at ¶ 7, 14.

{¶ 28} Finally, in *Disciplinary Counsel v. Hoover*, 2022-Ohio-769, the attorney became so confrontational with a tenant living on his property that the tenant locked himself inside his apartment while the attorney threatened to shoot him with the shotgun he was holding. The attorney then grabbed a baseball bat and shattered a glass door to the tenant's apartment. The tenant called the police, and when they arrived, the attorney, holding the bat, approached an officer but then dropped the bat and was arrested. He pleaded guilty to burglary, a third-degree felony, and aggravated menacing, a first-degree misdemeanor.

{¶ 29} In mitigation, the board found no prior discipline, full and free disclosure to the board and a cooperative attitude, evidence of good character and reputation, imposition of other penalties and sanctions, a mitigating mental

disorder, acceptance of responsibility for his misconduct, and a demonstration of remorse. *Id.* at ¶ 17-20. There were no aggravating factors. *Id.* at ¶ 17. Having suspended the attorney's law license on an interim basis, we determined that he violated Prof.Cond.R. 8.4(h) and suspended him from the practice of law for two years with credit for the time he had served under his interim felony suspension and conditions on his reinstatement. *Id.* at ¶ 2-3, 30.

{¶ 30} We agree with the board and find these cases relevant and persuasive in determining McClain's sanction. A theme among these cases, which resulted in two-year license suspensions with credit for the time served under interim felony suspensions, is that they involve violence with a weapon, usually a firearm. *Hoover* involved the threatened discharge of a firearm, but McClain actually discharged his firearm as did West and Howard. Additionally, alcohol fueled McClain's violent behavior, as it did West's and Whitfield's.

{¶ 31} We take McClain's violent and reckless acts seriously. Mixing weapons and alcohol not only endangered the women he assaulted and threatened, but it created a danger to the public. As in *West, Howard, Whitfield,* and *Hoover,* a two-year suspension from the practice of law is an appropriate sanction for the egregious conduct displayed in this case.

{¶ 32} But we also must weigh the mitigation present in this case and the efforts at rehabilitation that McClain has undertaken since the incident. Many of the mitigating factors here align with those found in *Howard*, *Whitfield*, and *Hoover*, which all resulted in two-year suspensions with credit for the time served under interim felony suspensions. Further, as the board acknowledged, the incident in this case can be attributed to McClain's excessive alcohol intake and untreated mental- health issues. And in dealing with his alcohol abuse and mental-health issues, McClain has taken positive steps to rehabilitate himself. Since the incident, McClain has stayed sober, completed various programs and therapies, and regularly attended AA.

{¶ 33} In addition, this is McClain's first instance of attorney misconduct, he made full and free disclosure to the board, and he was cooperative during the disciplinary proceedings.  He has also had other sanctions imposed in the form of his criminal sentence and the agreed entry in his divorce case.  Additionally, McClain has taken full responsibility for his misconduct.  This is evident from his disciplinary hearing, during which he retracted his earlier complaint to a judge that Cash had no cause to stab him and should be prosecuted for doing so.  McClain also presented supportive letters vouching for his good reputation.  Finally, we recognize McClain's long and continued military service to this country, including three six-month deployments overseas.

{¶ 34} Having thoroughly reviewed the record and our applicable precedent, we adopt the board's recommended sanction and conclude that a two-year suspension, with credit for the time served under the interim felony suspension, will adequately protect the public.

## CONCLUSION

{¶ 35} Accordingly, we suspend William Allen McClain from the practice of law in Ohio for two years, with credit for the time he has served under his March 15, 2023 interim felony suspension.  In addition to the general requirements of Gov.Bar R. V(24), McClain's reinstatement is conditioned on McClain's demonstrating (1) compliance with the terms of the February 22, 2023 judgment entry of sentence in Warren C.P. No. 22CR39902, including his three-year period of community control, (2) compliance with the terms of his three-year OLAP contract executed on December 13, 2022, and any extension thereof, (3) compliance with the terms of the July 25, 2023 agreed entry in Warren C.P. No. 2016DR39162, (4) compliance with the treatment recommendations of McClain's mental-health professionals, and (5) proof from a qualified healthcare professional, to a reasonable degree of psychological certainty, that McClain can return to the competent, ethical, and professional practice of law.  Costs are taxed to McClain.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Benjamin B. Nelson, Assistant Disciplinary Counsel, for relator.

William Allen McClain, pro se.

_____