**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Toledo Bar Assn. v. Riley***, Slip Opinion No. 2024-Ohio-4941.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4941

TOLEDO BAR ASSOCIATION *v.* RILEY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Toledo Bar Assn. v. Riley*, Slip Opinion No. 2024-Ohio-4941.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Indefinite suspension, with no credit for time served under interim felony suspension.*

(No. 2024-1104—Submitted September 3, 2024—Decided October 16, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-041.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ.  BRUNNER, J., did not participate.

**Per Curiam.**

**{¶ 1}** Respondent, Tyrone Riley, of Toledo, Ohio, Attorney Registration No. 0010605, was admitted to the practice of law in Ohio in 1985.  On April 6,

2000, we suspended Riley from the practice of law and imposed continuing-legal-education ("CLE") monetary sanctions against him under Gov.Bar R. X. *In re Report of the Comm. on Continuing Legal Edn.*, 2000-Ohio-2859. We reinstated him to the practice of law on May 18, 2000. *Id.* On September 15, 2023, we suspended Riley's license on an interim basis following his felony conviction on one count of extortion under color of official right, in violation of the Hobbs Act, 18 U.S.C. 1951, and that suspension remains in effect. *See In re Riley*, 2023-Ohio-3267.

{¶ 2} On November 27, 2023, relator, the Toledo Bar Association, filed a complaint with the Board of Professional Conduct for the misconduct underlying Riley's felony conviction. Riley waived a probable-cause determination, and in his answer, he admitted to all but one of relator's allegations. The parties then jointly submitted comprehensive stipulations and proposed that Riley be indefinitely suspended from the practice of law. The parties did not make a recommendation regarding whether Riley should receive credit for time served under his interim felony suspension.

{¶ 3} After a hearing, a panel of the board issued a report finding that Riley committed the stipulated misconduct and recommending that he receive an indefinite suspension with no credit for time served under his interim felony suspension. The board adopted the panel's findings of fact, conclusions of law, and recommendations.

{¶ 4} After a thorough review of the record and our applicable precedent, we adopt the board's findings of fact and misconduct and agree that the appropriate sanction for Riley's ethical violations is an indefinite suspension from the practice of law with no credit for time served under the interim felony suspension.

**MISCONDUCT**

{¶ 5} Riley served as the District 1 member of the Toledo City Council from 2012 until July 22, 2020, when he temporarily relinquished his position pending

the federal investigation that led to his conviction. On July 21, 2020, Riley and four other defendants—three of whom were also members of the city council—were indicted in the United States District Court for the Northern District of Ohio. *See United States v. Riley*, N.D.Ohio No. 3:20-cr-371.

{¶ 6} Alongside other legislative matters that came before it, the city council often considered and voted on zoning changes and special-use permits for local businesses. Requests for zoning changes and special-use permits were first evaluated by various city departments and committees, such as the City Plan Commission and the Zoning and Planning Committee before ultimately being presented to the city council for final approval.

{¶ 7} From April 2019 until February 2020, Riley voted on five requests for zoning changes and special-use permits for Toledo businesses in exchange for money or meals from an interested party. The money and meals had a combined value exceeding $5,000.

{¶ 8} One of these transactions involved an FBI source—known as "Source 2" in the indictment—who applied for a special-use permit for an internet café/sweepstakes terminal at 330 West Central Avenue in Toledo. On October 11, 2019, Riley called Source 2 and said, "I need to raise about five grand!" Source 2 responded by asking Riley for help with the special-use-permit application for the Central Avenue terminal, saying, "[Y]ou scratch my back, I'll scratch your back." Riley responded, "I'm in."

{¶ 9} On October 15, 2019, Riley and Source 2 met at a local restaurant, where they discussed the special-use permit for the Central Avenue terminal. Source 2 then gave Riley $5,000 in cash—hidden in a magazine—in the parking lot of the restaurant.

{¶ 10} On October 18, 2019, Riley and Source 2 met for a second time. Citing trust issues with Source 2, Riley returned the cash and instructed Source 2 to hold on to it for him. Riley said that he "had a plan" for the money. Eleven days

later, on October 29, Riley and Source 2 met for a third time, at which point Riley took the $5,000 in cash again, saying that the money was "a loan" with no interest rate and that repayment was due by the end of 2024.

{¶ 11} On February 25, 2020, Riley voted in favor of granting a special-use permit for 330 West Central Avenue, which allowed Source 2 to open and operate an internet café. In a subsequent review of Riley's personal, professional, and campaign bank accounts, the FBI did not find any deposits in the amount of $5,000. Riley had not listed his receipt of the $5,000 on his campaign-finance report either.

{¶ 12} A federal grand jury indicted Riley and four other defendants and returned a superseding indictment after one of Riley's codefendants died. The superseding indictment charged Riley with violations of the Hobbs Act, including one count of conspiracy and five counts of extortion under color of official right.

{¶ 13} On December 16, 2022, Riley pleaded guilty to one count of Hobbs Act extortion under color of official right in exchange for the dismissal of the other counts against him. The federal district court imposed a sentence of 24 months in prison, one year of supervised release, and a $100 special assessment. Riley began serving his prison sentence on January 5, 2024.

{¶ 14} Based on the evidence and stipulations of the parties, the board found by clear and convincing evidence that Riley violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(e) (prohibiting a lawyer from stating or implying an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law). The panel unanimously dismissed a charge alleging that Riley violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 15} We adopt the board's findings of misconduct.

## SANCTION

**{¶ 16}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 17}** The board found two aggravating factors in this case: (1) prior discipline and (2) a dishonest or selfish motive. *See* Gov.Bar R. V(13)(B)(1) and (2). As for mitigating factors, the board found that Riley had (1) made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, (2) submitted evidence of his good character and reputation, and (3) had other penalties or sanctions imposed for his misconduct. *See* Gov.Bar R. V(13)(C)(4) through (6). The board also considered Riley's history of public service as evidence of his good character, noting that he had organized and hosted numerous charitable events for the Toledo community throughout his tenure on the city council: he arranged block-watch meetings, sponsored an annual charity event called SmithFest—where bikes and books were distributed to children in need—and partnered with local schools to host a yearly Crispus Attucks writing competition.

**{¶ 18}** The board recommends that we indefinitely suspend Riley from the practice of law, with no credit for time served under his interim felony suspension.

**{¶ 19}** Our caselaw recognizes a presumption that permanent disbarment is the appropriate sanction for attorneys in public office who commit extortion. *Ohio State Bar Assn. v. Johnson*, 2002-Ohio-3998, ¶ 6. This sanction, however, may be tempered when mitigating evidence justifies a sanction less severe than permanent disbarment. *See id.* For example, we have considered an attorney's prior commitment to public service as evidence that he or she has a capacity for rehabilitation sufficient to one day return to the practice of law. *See id.* at ¶ 8 ("To this we add the [mitigating] fact that [the] respondent at one time effectively served

the community."); *see also Disciplinary Counsel v. Kelly*, 2009-Ohio-317, ¶ 18 (evidence of attorney's philanthropic pursuits and efforts on behalf of the bar established her potential to recover her ethical orientation and serve in a professional capacity); *Disciplinary Counsel v. Hale*, 2014-Ohio-5053, ¶ 30 (attorney's "reputation for significant involvement in the community and for his commitment to the judicial system and the citizens he served" was a mitigating factor).

**{¶ 20}** The attorney in *Johnson* served in the Ohio Senate from 1990 until 1999, when he was convicted of three counts of extortion under color of official right in violation of the Hobbs Act. He engaged in a pattern of conduct in which he helped constituents obtain lottery licenses, WIC (Women, Infants, and Children) Program grocery contracts, liquor permits, and other privileges in exchange for campaign contributions and loans. We concluded that Johnson violated the former Code of Professional Responsibility by engaging in illegal conduct involving moral turpitude; conduct involving dishonesty, fraud, deceit, or misrepresentation; conduct prejudicial to the administration of justice; and conduct adversely reflecting on his fitness to practice law. *Johnson* at ¶ 1, 6; *see also* Prof.Cond.R. Appendix A, 110 Ohio St.3d cclxxiv, cclxxix (DR 1-102(A)(3) through (6) of former Code of Professional Responsibility are analogous to provisions of Prof.Cond.R. 8.4).

**{¶ 21}** We did not expressly identify any aggravating factors in *Johnson*, but mitigating factors included the absence of prior discipline, cooperation in the disciplinary process, and evidence of good character and reputation. *Johnson* at ¶ 8. The board recommended permanent disbarment, but we concluded that the mitigating evidence presented justified a lesser sanction. *Id.* at ¶ 5-6. We indefinitely suspended Johnson, allowing him the opportunity to prove his rehabilitation and someday return to the practice of law. *Id.* at ¶ 9 ("Because this possibility exists, we find the sanction of indefinite suspension to be appropriate.").

**{¶ 22}** In addition to *Johnson*, the board relied on *Mahoning Cty. Bar Assn. v. Sciortino*, 2018-Ohio-4961, in making its recommendation. Sciortino was convicted of having an unlawful interest in a public contract, falsification, soliciting or accepting unlawful compensation, and unauthorized use of property—convictions stemming from actions he took while serving as the Mahoning County auditor. We concluded that Sciortino violated Prof.Cond.R. 8.4(b) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). *Id.* at ¶ 14. We found as aggravating factors that Sciortino had a prior disciplinary record and had committed multiple offenses, *id.* at ¶ 16, while mitigation included the lack of a selfish motive, a cooperative attitude toward the disciplinary proceedings, evidence of good character and reputation, and other penalties and sanctions previously imposed for his misconduct, *id.* at ¶ 17. We imposed an indefinite suspension but declined to grant credit for time Sciortino had served under his interim felony suspensions because he had pleaded guilty to five offenses and because he committed them while performing his public duties as the Mahoning County auditor. *Id.* at ¶ 23.

**{¶ 23}** Here, Riley violated Prof.Cond.R. 8.4(b) and 8.4(e), and his misconduct is comparable to the ethical violations in *Johnson* and *Sciortino*; the attorneys in both cases received indefinite suspensions for their acts of corruption in public office. Like Johnson, Riley was a public official who was convicted of extortion under color of official right in violation of the Hobbs Act. Further, both Riley and Johnson engaged in "good public works," *Johnson*, 2002-Ohio-3998, at ¶ 7, and—at one time—effectively served their respective communities. Those facts justified imposing a sanction less severe than disbarment in *Johnson*. Like the misconduct in *Sciortino*, however, Riley's offense occurred in the performance of his public duties. Therefore, following *Sciortino*, we decline to give Riley credit for time served under his interim felony suspension.

**{¶ 24}** Our imposition of an indefinite suspension rather than a permanent disbarment does not diminish the gravity of Riley's misconduct. Lawyers in positions of public trust "assume legal responsibilities going beyond those of other citizens." Prof.Cond.R. 8.4, comment 5. We have previously stated that "'[t]here must be no misunderstanding that the legal profession demands adherence to the highest standards of honesty and integrity; and lawyers who hold public office must be *especially* scrupulous in this regard.'" (Emphasis added.) *Disciplinary Counsel v. Taft*, 2006-Ohio-6525, ¶ 14, quoting the board's report in that case.

**{¶ 25}** Nonetheless, based on Riley's record of public service and commitment to the community, we are convinced that he has the potential for rehabilitation and that he may one day prove he is capable of resuming the ethical practice of law. Therefore, rather than foreclose that possibility, we conclude that an indefinite suspension with no credit for time served under Riley's interim felony suspension is the appropriate sanction for his misconduct.

## CONCLUSION

**{¶ 26}** Accordingly, Tyrone Riley is indefinitely suspended from the practice of law in Ohio with no credit for time served under his interim felony suspension. Costs are taxed to Riley.

Judgment accordingly.

———————————

Margaret Mattimoe Sturgeon, Bar Counsel, and Christopher F. Parker, Assistant Bar Counsel, for relator.

Boss & Vitou Co., L.P.A., and Charles M. Boss, for respondent.

———————————