**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Fusco*, Slip Opinion No. 2025-Ohio-5397.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5397

DISCIPLINARY COUNSEL *v*. FUSCO.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Fusco*, Slip Opinion No. 2025-Ohio-5397.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Indefinite suspension with no credit for time served under interim felony suspension.*

(No. 2024-1404—Submitted January 7, 2025—Decided December 5, 2025.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2024-008.

_____

KENNEDY, C.J., authored the opinion of the court, which FISCHER, LELAND, HAWKINS, and SHANAHAN, JJ., joined. DEWINE, J., concurred in part and dissented in part, with an opinion joined by DETERS, J. DAVID J. LELAND, J., of the Tenth District Court of Appeals, sat for BRUNNER, J.

**KENNEDY, C.J.**

{¶ 1} Respondent, Anthony James Fusco, of Youngstown, Ohio, Attorney Registration No. 0093904, was admitted to the practice of law in Ohio in 2015. On September 21, 2022, we suspended Fusco from the practice of law on an interim basis pursuant to Gov.Bar R. V(18)(A)(4), following his conviction on a third-degree felony count of insurance fraud. *See In re Fusco*, 2022-Ohio-3300. That suspension remains in effect.

{¶ 2} Fusco engaged in a fraudulent scheme of submitting falsely inflated medical bills of his clients to insurers and third-party claim administrators over a span of more than two and a half years to increase the amount he received in bonuses from his former law firm. After a criminal investigation by the Ohio Department of Insurance, he was convicted of insurance fraud—a third-degree felony.

{¶ 3} After the filing of a complaint against Fusco in March 2024, relator, disciplinary counsel, and Fusco stipulated that Fusco's conduct violated three rules of the Ohio Rules of Professional Conduct and agreed that the appropriate sanction was a two-year suspension from the practice of law, with the parties reserving the right to argue whether Fusco should receive credit for time served under his interim felony suspension. The Board of Professional Conduct agreed with the parties that the rule violations occurred but rejected the sanction they proposed. Instead, the board recommended a one-year suspension with no credit for time served under Fusco's interim felony suspension. No objections have been filed.

{¶ 4} After independently reviewing the record and our precedent, we adopt the board's findings of misconduct. However, we reject its recommended sanction. Instead, our precedent establishes that Fusco's fraudulent scheme of falsely inflating $859,464.44 worth of clients' medical bills to increase the amount he received in bonuses warrants an indefinite suspension from the practice of law with no credit for time served under his interim felony suspension.

**MISCONDUCT**

{¶ 5} The stipulated evidence shows that Fusco started working at a personal-injury law firm in December 2015, approximately three weeks after he was admitted to the bar. He handled client cases through the prelitigation-settlement phase, including the negotiation of settlement amounts.

{¶ 6} Fusco's compensation at the firm consisted of a $45,000 annual base salary plus annual bonuses that were based on a percentage of the fees earned through his work over the course of a calendar year. The more fees Fusco earned for the firm, the greater percentage of those fees he received in bonuses.

{¶ 7} Part of Fusco's duties at the firm included helping to prepare demand packages, each one consisting of a client's medical bills and other documents concerning the client's medical treatment. These demand packages would be submitted to insurance companies on behalf of his clients. At any given time, Fusco was responsible for 400 to 600 separate clients.

{¶ 8} Over the course of his fraudulent scheme, which began in March 2017 and ended in October 2019, Fusco submitted a total of $859,464.44 in falsely inflated medical bills in 399 cases involving 62 insurers and third-party claim administrators. These fraudulent bills led to larger settlements for his clients, and since Fusco's compensation at the firm included annual bonuses that were based on a percentage of the fees earned through his work, a portion of the $118,046.05 in bonuses he received from the firm in 2017 through 2019 stemmed from his inflated-bills scheme.

{¶ 9} Eventually, an insurer contacted Fusco's firm about what appeared to be an inflated medical bill. When questioned about this by the firm's senior partners, Fusco initially lied to them about what had occurred. He later admitted to them that he had inflated that medical bill but denied that he had inflated any others. Nonetheless, he submitted his resignation to the firm on October 2, 2019.

**{¶ 10}** The insurer contacted the Ohio Department of Insurance, alleging that Fusco had committed insurance fraud. The department's criminal investigation culminated in an indictment being filed against Fusco on single counts of telecommunications fraud, a felony of the second degree, and insurance fraud, a felony of the third degree. Fusco pleaded guilty to the insurance-fraud count in exchange for the dismissal of the telecommunications-fraud count, and the trial court sentenced him to 18 months in prison. Fusco served about 40 days of his sentence before being granted judicial release with probation.

**{¶ 11}** In a March 2024 complaint, relator charged Fusco with violating three ethical rules arising from conduct related to his felony conviction. The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors. They stipulated that Fusco's conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). In addition, the parties stipulated that Fusco's misconduct was sufficiently egregious to warrant finding a separate violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), *see Disciplinary Counsel v. Bricker*, 2013-Ohio-3998, ¶ 21. They also agreed that a two-year suspension from the practice of law with no stay would be the appropriate sanction for Fusco's misconduct, but each party reserved the right to argue whether Fusco should receive credit for time served under his interim felony suspension.

**{¶ 12}** After conducting a hearing, a three-member panel of the board found by clear and convincing evidence that Fusco had committed the charged misconduct. The panel, however, believed that the parties' recommended sanction was "unduly harsh" and recommended that Fusco be suspended from the practice of law for one year with no credit for time served under his interim felony

4

suspension. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. No objections have been filed.

{¶ 13} We adopt the board's findings of misconduct but reject its recommended sanction. We conclude that the appropriate sanction for Fusco's misconduct is an indefinite suspension from the practice of law with no credit for time served under his interim felony suspension.

## SANCTION

{¶ 14} "'Each disciplinary case involves unique facts and circumstances.'" *Disciplinary Counsel v. Nowicki*, 2023-Ohio-3079, ¶ 35 (Kennedy, C.J., concurring in part and dissenting in part), quoting Gov.Bar R. V(13)(A). "When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases," *Disciplinary Counsel v. Bereday*, 2019-Ohio-1895, ¶ 11, "to ensure a fair and equitable disciplinary system," *Nowicki* at ¶ 35 (Kennedy, C.J., concurring in part and dissenting in part). In addition, when this court first imposes an interim felony suspension under Gov.Bar R. (V)(18)(A)(4) and then imposes an indefinite or term suspension, this court must decide whether to grant credit for time served under the interim felony suspension. Gov.Bar R. V(17)(D)(2).

*Aggravating and Mitigating Factors*

{¶ 15} The parties stipulated and the board found that three aggravating factors are present in this case: Fusco acted with a dishonest or selfish motive, engaged in a pattern of misconduct, and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(2) through (4). As for mitigating factors, the parties stipulated and the board found that Fusco had a clean disciplinary record, exhibited a cooperative attitude toward the proceedings, and had other penalties or sanctions imposed for his misconduct—namely, his criminal sentence. *See* Gov.Bar R. V(13)(C)(1), (4), and (6).

{¶ 16} Fusco did not establish as a mitigating factor the existence of a "disorder [that] contributed to cause the misconduct" under Gov.Bar R. V(13)(C)(7)(b). Nevertheless, he testified at his disciplinary hearing that around 2016, he began to misuse Adderall that had been prescribed to him, taking it at work and in the evenings so that he could stay up late into the night and work from home. He stated that he would sometimes stay awake for over 50 hours with maybe an hour of sleep. He claimed that by 2018, he was "spiraling in addiction," his personal life "was a wreck," and he was consumed with work and how many cases he could settle.

{¶ 17} On the suggestion of his counsel in this disciplinary proceeding, Fusco contacted the Ohio Lawyers Assistance Program ("OLAP") and submitted to a mental-health assessment. He testified that he entered into a two-year OLAP contract (which commenced on April 2, 2024), began attending Alcoholics Anonymous meetings, and commenced mental-health treatment. At his disciplinary hearing, Fusco testified that he was no longer taking Adderall, that he was not taking any other medications, and that he was not being treated by a medical physician.

*Sanctions Imposed in Comparable Cases*

{¶ 18} In support of its recommended sanction of a one-year suspension from the practice of law with no credit for the time Fusco has served under his interim felony suspension, the board cites two cases: *Disciplinary Counsel v. Kraemer*, 2010-Ohio-3300, and *Disciplinary Counsel v. Gittinger*, 2010-Ohio-1830.

{¶ 19} In *Kraemer*, the attorney and the law firm that employed him had agreed that he would receive 40 percent of the fees collected from his cases and that the firm would receive the remaining 60 percent of those fees. Over a four-month period, he collected nearly $12,000 in fees for which he failed to remit the

firm's agreed percentage. Kraemer ceased his criminal activity before he was caught and admitted wrongdoing when confronted by law enforcement.

{¶ 20} As a result of his conduct, Kraemer's employment at the firm was terminated and he was charged with a fifth-degree felony count of theft. After pleading guilty to that offense, Kraemer was sentenced to three years of community control, fined $1,000, and ordered to make restitution of $7,157.10 to the firm. Along with the three ethical rules that Fusco violated in this case, Kraemer stipulated that his conduct violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). *See Kraemer* at ¶ 5.

{¶ 21} In addition to the aggravating and mitigating factors present here, we found that several additional mitigating factors were present in *Kraemer*—namely, Kraemer's payment of restitution, good character and reputation, and diagnosis of a qualifying mental disorder. *See Kraemer*, 2010-Ohio-3300, at ¶ 8-9. On those facts, we suspended Kraemer for two years with one year stayed on the conditions that he continue to participate in mental-health counseling and serve a two-year term of monitored probation. *Id*. at ¶ 15. Citing the short duration of Kraemer's misconduct, the small scale of his theft, his acceptance of responsibility for his misconduct and sincere expression of remorse, and the absence of any objection from the relator, we credited Kraemer with one year of his interim felony suspension against his sanction. *Id.* at ¶ 14-15. With that credit, Kraemer was left to serve the conditionally stayed portion of his suspension. *See id.* at ¶ 15.

{¶ 22} In *Gittinger*, the attorney was a principal of a business that owned a title-insurance agency. Gittinger was convicted of conspiracy to commit bank fraud and money laundering for his role in falsifying real-estate closing documents to defraud federally insured financial institutions and causing a loss somewhere between $400,000 and $1,000,000. Gittinger did not receive any tangible personal gain or profit from his misconduct. And because his participation in the conspiracy

related to the purported sale of a single property and occurred over a short period of time, we found that his misconduct constituted a one-time violation, *Gittinger*, 2010-Ohio-1830, at ¶ 47. Gittinger was sentenced to an aggregate prison term of 12 months and one day plus five years of supervised release, during which he was prohibited from practicing law, and he was ordered to pay a $6,000 fine and a $200 special-assessment fee.

{¶ 23} We concluded that Gittinger's misconduct violated three disciplinary rules under the former Code of Professional Responsibility that are directly analogous to the three ethical rules Fusco violated in this case. *See id*. at ¶ 3, 40, citing former DR 1-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude), former DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and former DR 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). Mitigating factors included Gittinger's clean disciplinary record, full cooperation in the disciplinary proceedings, and positive character evidence. *Id.* at ¶ 41. The parties stipulated that Gittinger had accepted responsibility and expressed remorse for his misconduct. *Id.* The board and this court, however, found that he had refused to acknowledge the wrongful nature of his misconduct because during his disciplinary proceeding, he denied that any loss resulted from his misconduct— despite his statement in his federal plea agreement that the loss attributable to his misconduct exceeded $400,000. *Id*. at ¶ 42. In addition, we found that Gittinger had acted with a dishonest or selfish motive. *Id*. at ¶ 43. We indefinitely suspended Gittinger for his misconduct and credited him for the over 18 months served under his interim felony suspension. *See id.* at ¶ 49.

{¶ 24} We recognize that these two cases involve similar misconduct and some of the same aggravating and mitigating factors. However, Fusco's case is

distinguishable from *Kraemer* and *Gittinger* because Fusco's misconduct was more egregious and his mitigating evidence is less compelling.

{¶ 25} First, Fusco's criminal activity was not a one-time occurrence. He falsely inflated medical bills in 399 cases involving 62 insurers and third-party claim administrators. Second, Fusco's falsely inflated billing demanded a total of $859,464.44 in fake costs. Kraemer stole around $7,000, and the loss Gittinger caused may have been comparable to the loss Fusco caused, but unlike Fusco, Gittinger received no tangible personal gain or profit from his misconduct. Third, Fusco's criminal activity spanned more than two and a half years; he began his fraudulent scheme in March 2017 and ended his graft only when he was caught in October 2019. Kraemer's crimes lasted four months, and Gittinger's was a one-time occurrence. Fourth, Fusco lied after his scheme was uncovered; he initially denied any wrongdoing when questioned by his firm's senior partners, but he later admitted to them that he had inflated the medical bill originally flagged by an insurer. However, he continued his deception by denying to them that he had inflated any others.

{¶ 26} Moreover, Fusco's mitigating evidence deserves less weight than that which was presented in *Kraemer* and *Gittinger*. First, Fusco was not ordered to pay restitution as part of his criminal sentence, and nothing in the record shows that he disgorged or will disgorge any of his ill-gotten gains or that the hundreds of thousands of dollars in fake costs will be recouped by the insurers or third-party claim administrators. Kraemer paid restitution. Second, Fusco did not provide sufficient evidence to support finding good character and reputation as a mitigating factor—Kraemer and Gittinger did, *Kraemer*, 2010-Ohio-3300, at ¶ 8; *Gittinger*, 2010-Ohio-1830, at ¶ 41, 47. Third, although the board credited him with having other sanctions imposed, Fusco served only approximately 40 days of his 18-month prison sentence before being granted judicial release. Kraemer committed a lesser-degree felony than Fusco, while Gittinger served his year-and-a-day prison

sentence and was ordered to pay a $6,000 fine. Lastly, unlike Kraemer, *see Kraemer* at ¶ 8, Fusco did not establish the existence of a disorder to qualify as a mitigating factor. He claimed at his disciplinary hearing that while committing his misconduct, he abused Adderall. However, the record does not show that his drug abuse contributed to cause his misconduct or that he has received a prognosis that he can return to the competent, ethical professional practice of law. *See* Gov.Bar R. V(13)(C)(7)(b) and (d).

{¶ 27} Because of the significant differences in misconduct and mitigating evidence between this case and *Kraemer* and *Gittinger*, the sanctions imposed in those cases are not appropriate here. Instead, we find three other cases more instructive on the appropriate sanction to impose: *Disciplinary Counsel v. George*, 2020-Ohio-2902; *Cleveland Metro. Bar Assn. v. King*, 2019-Ohio-4715; and *Disciplinary Counsel v. Muntean*, 2010-Ohio-6133.

{¶ 28} First, in *George*, the attorney participated in a company's fraudulent scheme spanning nearly four years that bilked more than 70 investors out of more than $31 million. George helped facilitate the fraud by using his client trust account as a depository for investors' funds—the company had promoted him as an attorney and "escrow agent" to assure investors that their money was safe. Based on this conduct, he was convicted of conspiracy to commit wire fraud and securities fraud.

{¶ 29} We found that George's conduct violated Prof.Cond.R. 8.4(b), 8.4(c), and 8.4(h). *George* at ¶ 9. In determining a sanction, we considered the aggravating factors of a history of prior discipline, a pattern of misconduct, multiple offenses, and harm to vulnerable persons. *Id.* at ¶ 11. As for mitigation, we found that George had exhibited a cooperative attitude toward the disciplinary proceedings, submitted numerous letters as evidence of his good character and reputation, and had other penalties or sanctions imposed in the form of a prison sentence and a restitution order. *Id.* at ¶ 7-8, 11-14. Considering George's candor during his criminal prosecution and disciplinary proceedings, his genuine remorse,

and the significant evidence of his good character and reputation and extensive community involvement, we imposed an indefinite suspension from the practice of law with no credit for time served under his interim felony suspension. *Id.* at ¶ 19.

{¶ 30} Second, in *King*, the attorney proposed forming a corporation to launder money derived from a confidential informant's profits in the drug trade. King subsequently accepted $20,000 in marked bills from the informant but never incorporated the proposed corporation. Instead, he complied with the informant's multiple requests for cash and eventually refunded the full $20,000 to the informant. He also wrote and delivered two $2,000 checks to the informant from his personal account. Based on this conduct, King was convicted on two counts of money laundering and one count of attempted money laundering.

{¶ 31} We found that King's conduct violated Prof.Cond.R. 8.4(b), 8.4(c), and 8.4(h). *King*, 2019-Ohio-4715, at ¶ 7. In determining a sanction, we considered the single aggravating factor of a dishonest or selfish motive. *Id.* at ¶ 11. In mitigation, we found that King had cooperated with the disciplinary investigation, presented evidence of his good character and skills as a lawyer, had other penalties or sanctions imposed for his criminal conduct, and completed an alcohol-and-drug treatment program as part of his rehabilitation. *Id.* at ¶ 8. Based on the facts and significant mitigating evidence presented, we rejected the relator's request for permanent disbarment and instead imposed an indefinite suspension from the practice of law with no credit for time served under King's interim felony suspension. *Id*. at ¶ 2-3, 19-20.

{¶ 32} Third, in *Muntean*, the attorney was treasurer of the board of the Summit County Court Appointed Special Advocates ("CASA"). Muntean used CASA funds for his personal expenses, converting nearly $50,000 to his own use in only a few months. Based on this conduct, he was convicted of grand theft and was sentenced to six months' incarceration. However, his term of incarceration

was suspended on several conditions, including that he had to make full restitution to CASA.

{¶ 33} We found that Muntean's conduct violated Prof.Cond.R. 8.4(b), 8.4(c), and 8.4(h). *Muntean*, 2010-Ohio-6133, at ¶ 4. In determining a sanction, we found three aggravating factors: a selfish or dishonest motive, a pattern of misconduct, and the presence of multiple offenses. *Id.* at ¶ 6. In mitigation, we considered that Muntean had made full restitution to CASA, had no prior discipline, and had cooperated with the disciplinary process. *Id.* Based on the facts and significant mitigating evidence presented, we imposed an indefinite suspension from the practice of law with credit for time served under Muntean's interim felony suspension. *Id*. at ¶ 12-13.

{¶ 34} Like the attorney's misconduct in *George*, Fusco's misconduct took place over a long period. Fusco and Muntean share the same aggravating factors of acting with a dishonest or selfish motive, engaging in a pattern of misconduct, and committing multiple offenses. The monetary amount of Fusco's falsely inflated medical claims is less than the monetary amount that the fraudulent scheme bilked from investors in *George*, but it is greater than the monetary amounts that were at issue in *King* and *Muntean*. And the common thread between Fusco and the attorneys in *George*, *King*, and *Muntean* is that based on their conduct, they were all convicted of at least one financial crime.

{¶ 35} Fusco personally benefited from his misconduct by his receiving a total of $118,046.05 in bonuses that were undeniably increased because of his fraudulent activity, and he was convicted on a single count of insurance fraud despite his submitting inflated medical bills in 399 cases involving 62 insurers and third-party claim administrators. There is not sufficient mitigation here to depart from our caselaw involving attorneys who committed financial crimes and on whom we imposed indefinite suspensions from the practice of law.

**{¶ 36}** We acknowledge that our prior decision in *Disciplinary Counsel v. Fitz*, 2022-Ohio-3108, may at first glance be comparable to this case, but it is not.

**{¶ 37}** Fitz was charged with three counts of workers' compensation fraud, all fourth-degree felonies, for failing to secure or maintain workers' compensation coverage during certain payroll periods between 2017 and 2019 for a housecleaning business he owned. Fitz pleaded guilty to one of the counts and the other two were dismissed. He was sentenced to five years of community control and ordered to pay restitution of $965,235. We found that Fitz's conduct violated Prof.Cond.R. 8.4(b) and 8.4(c)—two of the three ethical rules Fusco violated in this case. *See Fitz* at ¶ 12. This court did not find that Fitz's conduct violated Prof.Cond.R. 8.4(h). *See id.*

**{¶ 38}** There were only two aggravating factors present—Fitz had acted with a dishonest or selfish motive and engaged in a pattern of misconduct. *Id.* at ¶ 14. This court did not find that Fitz had committed multiple offenses. *See id.* As for mitigation, there were four factors—Fitz had a clean disciplinary record, had paid some restitution, had made full and free disclosures to the board and exhibited a cooperative attitude toward the disciplinary proceedings, and had had other sanctions imposed for his misconduct. *Id.* at ¶ 11, 14.

**{¶ 39}** Although the conduct for which Fitz was convicted occurred over a period of almost three and a half months, *Fitz*, 2022-Ohio-3108, at ¶ 9, the evidence in his disciplinary case showed that he had engaged in the misconduct for almost 13 years, *id*. at ¶ 23. By the time that we ruled on Fitz's disciplinary case, he had served more than two years and eight months under his interim felony suspension. *See id.* at ¶ 1. Citing the lengthy duration of Fitz's misconduct, the amount of the loss suffered by the Bureau of Workers' Compensation, and the small amount of restitution that Fitz had paid, we suspended Fitz for two years with no credit for time served under his interim felony suspension. *Id*. at ¶ 23, 25.

{¶ 40} After a review of our caselaw, we conclude that *Fitz* is an outlier. As we recently recognized in *Mahoning Cty. Bar Assn. v. Rohrbaugh*, there are numerous cases in which this court imposed an indefinite suspension on attorneys whose misconduct involved financial or tax crimes. 2024-Ohio-5127, ¶ 19 (citing 12 cases). We follow the weight of authority from this court and apply our caselaw indicating that an indefinite suspension is warranted in these circumstances.

{¶ 41} Having independently reviewed the record and our precedent, we conclude that Fusco's fraudulent scheme to increase the amount he received in bonuses from his former law firm warrants an indefinite suspension from the practice of law.

{¶ 42} We now turn to the question whether to grant Fusco credit for time served under his interim felony suspension.

*Credit for Time Served under an Interim Felony Suspension*

{¶ 43} When we impose an indefinite or term suspension, we may grant credit for time served under an interim felony suspension. Gov.Bar R. V(17)(D)(2). We have faced the question whether to grant credit in more than 100 interim-felony-suspension cases, and after an exhaustive review of this precedent, we notice that common themes emerge.

{¶ 44} We have almost always denied credit for time served under interim felony suspensions in cases involving sex crimes, including child-pornography and importuning offenses. *See Disciplinary Counsel v. Romer*, 2023-Ohio-3099; *Toledo Bar Assn. v. Long*, 2021-Ohio-3967; *Disciplinary Counsel v. Cosgrove*, 2021-Ohio-2188; *Disciplinary Counsel v. Connors*, 2020-Ohio-3339; *Disciplinary Counsel v. Schwarz*, 2020-Ohio-1542; *Disciplinary Counsel v. Martyniuk*, 2017-Ohio-4329; *Disciplinary Counsel v. Warren*, 2016-Ohio-7333; *Disciplinary Counsel v. Grossman*, 2015-Ohio-2340; *Dayton Bar Assn. v. Ballato*, 2014-Ohio-5063; *Dayton Bar Assn. v. Greenberg*, 2013-Ohio-1723; *Disciplinary Counsel v. Butler*, 2011-Ohio-236; *Disciplinary Counsel v. Andrews*, 2010-Ohio-931;

*Disciplinary Counsel v. Goldblatt*, 2008-Ohio-2458. We granted credit in *Disciplinary Counsel v. Ridenbaugh*, 2009-Ohio-4091, without giving a specific explanation why.

{¶ 45} We have been more likely to deny credit for time served under interim felony suspensions in cases involving felony-theft offenses. *See Lorain Cty. Bar Assn. v. Robinson*, 2021-Ohio-2123; *Lorain Cty. Bar Assn. v. Lindon*, 2021-Ohio-804; *Disciplinary Counsel v. Buttars*, 2020-Ohio-1511; *Columbus Bar Assn. v. Striff*, 2019-Ohio-5285; *Disciplinary Counsel v. Thomas*, 2016-Ohio-1582; *Disciplinary Counsel v. Zapor*, 2010-Ohio-5769; *Cincinnati Bar Assn. v. Schwieterman*, 2007-Ohio-4266; *Disciplinary Counsel v. Lloyd*, 71 Ohio St.3d 312 (1994); *see also Disciplinary Counsel v. Peterson*, 2012-Ohio-5719; *Cincinnati Bar Assn. v. Newman*, 2010-Ohio-5034 (silent on credit); *Disciplinary Counsel v. Bucio*, 2017-Ohio-8709 (unauthorized use of property); *Cleveland Metro. Bar Assn. v. Haynes*, 2015-Ohio-3706 (receiving stolen property).

{¶ 46} Nonetheless, we have granted credit for time served under interim felony suspensions in a smaller number of felony-theft cases. *See Disciplinary Counsel v. Ames*, 2016-Ohio-7830; *Disciplinary Counsel v. Mahin*, 2016-Ohio-3336; *Muntean*, 2010-Ohio-6133; *Kraemer*, 2010-Ohio-3300; *Akron Bar Assn. v. Smithern*, 2010-Ohio-652; *Disciplinary Counsel v. Burkhart*, 1996-Ohio-121; *Disciplinary Counsel v. Smith*, 1994-Ohio-44; *Akron Bar Assn. v. Oestreicher*, 50 Ohio St.3d 229 (1990).

{¶ 47} We have been more likely to deny credit for time served under interim felony suspensions in cases involving offenses that affect the administration of justice. *See Disciplinary Counsel v. Warner*, 2024-Ohio-551 (complicity to leaving the scene of an accident and complicity to tampering with evidence); *Mahoning Cty. Bar Assn. v. Atway*, 2018-Ohio-10 (conspiracy to injure, oppress, threaten, or intimidate any person in the free exercise and enjoyment of a legal right); *Disciplinary Counsel v. Cohen*, 2015-Ohio-2020 (attempted obstruction of

justice and attempted tampering with evidence); *Disciplinary Counsel v. Pappas*, 2014-Ohio-3676 (making a false statement to federal authorities); *Ohio State Bar Assn. v. McCafferty*, 2014-Ohio-3075 (making false statements to federal law enforcement); *Cleveland Metro. Bar Assn. v. McElroy*, 2014-Ohio-3774 (forgery and tampering with records); *Disciplinary Counsel v. O'Malley*, 2013-Ohio-4566 (misprision of a felony and making a materially false statement); *Cincinnati Bar Assn. v. Kellogg*, 2010-Ohio-3285 (conspiracy to obstruct government proceedings, money laundering, and conspiracy to commit money laundering); *Ohio State Bar Assn. v. Wolfson*, 2004-Ohio-3480 (tampering with evidence); *Disciplinary Counsel v. Camera*, 1999-Ohio-199 (perjury).

{¶ 48} But we have granted credit for time served under interim felony suspensions in other administration-of-justice cases. *See Disciplinary Counsel v. Wilson*, 2020-Ohio-3050 (telecommunications fraud based on attorney's attempt to thwart or hamper prosecution of a felony domestic-violence case); *Disciplinary Counsel v. Blaszak*, 2004-Ohio-6593 (sale of witness testimony in a pending case); *Disciplinary Counsel v. Allen*, 2002-Ohio-4212 (perjury, tampering with evidence, and tampering with records); *Disciplinary Counsel v. Dubyak*, 2001-Ohio-145 (mail fraud based on the attorney's agreeing to pay kickbacks for settlement information involving an insurer); *Disciplinary Counsel v. Papcke*, 88 Ohio St.3d 161 (2000) (forgery); *Disciplinary Counsel v. Derryberry*, 54 Ohio St.3d 107 (1990) (perjury).

{¶ 49} We have often granted credit for time served under interim felony suspensions in cases involving fraud offenses. *See Rohrbaugh*, 2024-Ohio-5127; *Bereday*, 2019-Ohio-1895; *Mahoning Cty. Bar Assn. v. Helbley*, 2014-Ohio-5064; *Mahoning Cty. Bar Assn. v. Wagner*, 2013-Ohio-5087; *Gittinger*, 2010-Ohio-1830; *Cuyahoga Cty. Bar Assn. v. Garfield*, 2006-Ohio-1935; *Disciplinary Counsel v. Dragelevich*, 2005-Ohio-5515; *Dayton Bar Assn. v. Brunner*, 2001-Ohio-82;

*Cincinnati Bar Assn. v. Arnold*, 1999-Ohio-459; *Disciplinary Counsel v. Lash*, 1993-Ohio-157.

{¶ 50} However, we did not grant credit for time served under interim felony suspensions in several other fraud cases. *See George*, 2020-Ohio-2902; *Disciplinary Counsel v. Marshall*, 2018-Ohio-4174; *Erie-Huron Counties Bar Assn. v. Evans*, 2009-Ohio-4146; *Fitz*, 2022-Ohio-3108.

{¶ 51} Attorneys who have committed tax crimes have also generally been granted credit for time served under interim felony suspensions. *See Disciplinary Counsel v. Atway*, 2020-Ohio-2794; *Akron Bar Assn. v. Plesich*, 2019-Ohio-4843; *Toledo Bar Assn. v. Manore*, 2019-Ohio-3846; *Disciplinary Counsel v. Lawrence*, 2016-Ohio-4605; *Disciplinary Counsel v. Jacobs*, 2014-Ohio-2137; *Disciplinary Counsel v. Land*, 2014-Ohio-1162; *Disciplinary Counsel v. Schuler*, 2014-Ohio-1127; *Disciplinary Counsel v. Smith*, 2011-Ohio-957; *Disciplinary Counsel v. Pace*, 2004-Ohio-5465; *Dayton Bar Assn. v. Seall*, 1998-Ohio-630; *but see Toledo Bar Assn. v. Weisberg*, 2010-Ohio-142 (denying credit); *Columbus Bar Assn. v. Hunter*, 2011-Ohio-5788 (silent on credit); *Disciplinary Counsel v. Rosenfield*, 2016-Ohio-1583 (denying credit).

{¶ 52} We have been more likely to grant credit for time served under interim felony suspensions in cases involving corruption-type offenses. *Disciplinary Counsel v. Hunter*, 2023-Ohio-4168 (having an unlawful interest in a public contract); *Disciplinary Counsel v. Doumbas*, 2017-Ohio-550 (bribery); *Akron Bar Assn. v. Peters*, 2002-Ohio-639 (having an unlawful interest in a public contract and conspiracy to commit mail fraud); *but see Toledo Bar Assn. v. Riley*, 2024-Ohio-4941 (denying credit in case involving conviction of extortion under color of official right); *Mahoning Cty. Bar Assn. v. Sciortino*, 2018-Ohio-4961 (denying credit in case involving conviction of having an unlawful interest in a public contract).

{¶ 53} For other types of crimes, our cases have been more evenly divided. This is true of violent crimes and weapons offenses. We denied credit for time served under interim felony suspensions in *Ohio State Bar Assn. v. Mason*, 2017-Ohio-9215 (attempted felonious assault); *Disciplinary Counsel v. Salters*, 2016-Ohio-1505 (trespassing in a habitation); *Cleveland Metro. Bar Assn. v. Hurley*, 2015-Ohio-1568 (unauthorized use of property, aggravated menacing, and telephone harassment); *Disciplinary Counsel v. LoDico*, 2008-Ohio-2465 (carrying a concealed weapon); *Cincinnati Bar Assn. v. Holcombe*, 2001-Ohio-1302 (attempted felonious assault); and *Disciplinary Counsel v. Cushion*, 2001-Ohio-181 (felonious assault and carrying a concealed weapon).

{¶ 54} However, we granted credit for time served under interim felony suspensions in *Disciplinary Counsel v. McClain*, 2024-Ohio-5197 (aggravated assault and inducing panic); *Disciplinary Counsel v. Reed*, 2023-Ohio-1420 (attempted burglary, trespassing in a habitation, and attempted failure to comply with an order or signal of a police officer); *Disciplinary Counsel v. Hoover*, 2022-Ohio-769 (burglary); *Disciplinary Counsel v. Whitfield*, 2012-Ohio-2708 (aggravated assault); *Disciplinary Counsel v. Howard*, 2009-Ohio-4173 (assault with a deadly weapon and inducing panic); *Disciplinary Counsel v. Goodall*, 2004-Ohio-5583 (aggravated assault); *Warren Cty. Bar Assn. v. West*, 1995-Ohio-333 (carrying a concealed weapon); and *Disciplinary Counsel v. Lucey*, 63 Ohio St.3d 143 (1992) (aggravated assault).

{¶ 55} There is also a split of authority in granting credit for time served under interim felony suspensions in cases involving illegal drugs. We denied credit in *Cincinnati Bar Assn. v. Hennekes*, 2006-Ohio-3669 (conspiracy to distribute and possess with intent to distribute cocaine), and *Disciplinary Counsel v. Martin*, 1994-Ohio-105 (drug abuse). But we granted credit in *Lorain Cty. Bar Assn. v. Robinson*, 2024-Ohio-1657 (maintaining a drug premises), and *Disciplinary*

*Counsel v. Pincus*, 1995-Ohio-174 (drug abuse; granted credit for voluntary interim suspension).

{¶ 56} In determining whether to grant or deny credit for time served under an interim felony suspension, the felony offense committed provides only the starting point. Although we have never set forth a definitive test, we have sometimes pointed to factors that militate granting or denying credit.

{¶ 57} Most often, we have looked at the duration of the criminal activity and considered whether the criminal act is a one-time violation or spanned a longer period. *See Rohrbaugh*, 2024-Ohio-5127, at ¶ 26; *Bereday*, 2019-Ohio-1895, at ¶ 16-17; *Marshall*, 2018-Ohio-4174, at ¶ 23; *Rosenfield*, 2016-Ohio-1583, at ¶ 14; *Thomas*, 2016-Ohio-1582, at ¶ 17; *Gittinger*, 2010-Ohio-1830, at ¶ 47; *Kraemer*, 2010-Ohio-3300, at ¶ 14.

{¶ 58} We have suggested other factors as well:

- **Administration of justice**: Whether the attorney thwarted the administration of justice, *see Atway*, 2018-Ohio-10, at ¶ 18; *O'Malley*, 2013-Ohio-4566, at ¶ 18; *Pappas*, 2014-Ohio-3676, at ¶ 21.

- **Amount of money involved**: Whether the crime involved a substantial amount of money, *see Thomas* at ¶ 17; *Disciplinary Counsel v. Margolis*, 2007-Ohio-3607, ¶ 27; *Kraemer* at ¶ 14.

- **Cooperation**: Whether the attorney cooperated in the disciplinary proceedings, *see Columbus Bar Assn. v. McGowan*, 2013-Ohio-1470, ¶ 17.

- **Good character and reputation**: Whether the attorney demonstrated good character and reputation, *see Gittinger* at ¶ 47.

- **Harm to others**: Whether the attorney caused great harm to others, *see Margolis* at ¶ 27; *Marshall* at ¶ 23.

- **Personal profit**: Whether the attorney personally profited from the misconduct, *see Gittinger* at ¶ 47.

- **Public trust**: Whether the attorney violated the public's trust, *see Sciortino*, 2018-Ohio-4961, at ¶ 23; *Riley*, 2024-Ohio-4941, at ¶ 23; *Disciplinary Counsel v. Bell*, 2024-Ohio-876, ¶ 24-25, 28.

- **Responsibility and remorse**: Whether the attorney accepted responsibility and expressed remorse for the misconduct, *see Kraemer* at ¶ 14; *Smith*, 2011-Ohio-957, at ¶ 15.

- **Restitution**: Whether the attorney paid restitution, *see Thomas* at ¶ 17.

- **Voluntary suspension**: Whether the attorney stopped practicing law voluntarily, *see Pincus*, 1995-Ohio-174, at ¶ 10.

{¶ 59} The opinion concurring in part and dissenting in part, however, focuses on the total length of time that Fusco will ultimately be suspended under his interim felony suspension and the indefinite suspension that we are imposing before he can petition for reinstatement. And it is true that in deciding to grant credit, we have expressly noted the length of time that the attorney had been suspended under an interim felony suspension. *See Hunter*, 2023-Ohio-4168, at ¶ 40 (recognizing that attorney had been suspended nearly nine years); *Smith* at ¶ 15 (noting that attorney had been suspended almost two years); *Blaszak*, 2004-Ohio-6593, at ¶ 24 (noting that attorney had been suspended over two years); *Pace*, 2004-Ohio-5465, at ¶ 15 (same).

{¶ 60} Yet we have denied credit notwithstanding a long period served under an interim felony suspension. *See Lindon*, 2021-Ohio-804, at ¶ 27 (attorney served over four years and eight months but credit denied "given the additional delay that was occasioned by [the attorney's] own dishonesty regarding his Michigan disbarment"); *Ballato*, 2014-Ohio-5063, at ¶ 29-30 (attorney served over five years and one month); *Mahoning Cty. Bar Assn. v. Theisler*, 2010-Ohio-1472, ¶ 22 (attorney served over four years and five months); *Andrews*, 2010-Ohio-931,

at ¶ 19 (attorney served over three years and seven months); *George*, 2020-Ohio-2902, at ¶ 20 (attorney served over three years and five months).

{¶ 61} And we have granted credit when an attorney has served considerably less time under an interim felony suspension. *See Muntean*, 2010-Ohio-6133, at ¶ 13 (attorney served almost one year); *Gittinger*, 2010-Ohio-1830, at ¶ 49 (attorney served almost one year and seven months); *Robinson*, 2024-Ohio-1657, at ¶ 25 (attorney served almost one year and four months).

{¶ 62} Further, under Gov.Bar R. V(18)(C), any disciplinary proceeding based on a conviction of an offense cannot be brought to hearing until all direct appeals from the conviction are concluded. So the length of time that an attorney serves under an interim felony suspension is not solely a question of how long the disciplinary proceedings take but also involves the timing of when the criminal proceedings conclude.

{¶ 63} This is all to say that the amount of time an attorney will ultimately be suspended is not the sole consideration in deciding whether the attorney should receive credit for time served under an interim felony suspension. Rather, each disciplinary case is unique, and we must look to the totality of the circumstances to determine whether credit is appropriate. *See* Gov.Bar R. V(13)(A).

{¶ 64} Fusco was suspended on an interim basis because of his conviction on a third-degree felony count of insurance fraud. And the length of time that Fusco has served under his interim felony suspension and his cooperative attitude toward the disciplinary proceedings cut in favor of granting him credit for the time he has served. Importantly, however, Fusco's crime was not a one-and-done violation; instead, his criminal activity spanned more than two and a half years before he was caught. And he spent only about 40 days in prison out of his 18-month prison sentence. He personally profited from his misconduct and caused great financial harm by submitting a total of $859,464.44 in falsely inflated medical bills in 399 cases involving 62 insurers and third-party claim administrators. Yet Fusco has

paid no restitution. Lastly, the board did not find that Fusco had established good character and reputation as a mitigating factor or that he has genuine remorse for his misconduct.

{¶ 65} Weighing these factors and considering our precedent, we deny Fusco credit for the time he has served under his interim felony suspension.

## CONCLUSION

{¶ 66} Accordingly, Anthony James Fusco is indefinitely suspended from the practice of law in Ohio with no credit for time served under his September 21, 2022 interim felony suspension. Costs are taxed to Fusco.

Judgment accordingly.

_____

**DEWINE, J., joined by DETERS, J., concurring in part and dissenting in part.**

{¶ 67} I agree with the majority's conclusion that under our precedent, Anthony James Fusco's actions warrant an indefinite suspension from the practice of law. However, I would award Fusco one year of credit for time served under his interim felony suspension. For that reason, I respectfully concur in part and dissent in part.

{¶ 68} This court may discipline a lawyer by imposing one of the following sanctions: (1) a public reprimand, (2) a six-months-to-two-year suspension (which may be stayed in whole or in part), (3) an indefinite suspension (with or without credit for time served), or (4) permanent disbarment. Gov.Bar R. V(12)(A)(1) through (3) and (5). When an attorney is convicted of a felony, he or she is subject to an interim suspension. Gov.Bar R. V(18)(A)(1)(a). Fusco pleaded guilty to one felony count of insurance fraud in 2022, and this court suspended him on an interim basis on September 21, 2022, *In re Fusco*, 2022-Ohio-3300. Consequently, Fusco has already been suspended from the practice of law for over three years.

{¶ 69} When this court imposes an indefinite suspension, "[n]o petition for reinstatement to the practice of law may be filed or entertained by the Supreme Court within two years of" the entry of the suspension order or the denial of a petition for reinstatement. Gov.Bar R. V(25)(A). Because an indefinite suspension carries a two-year waiting period before an attorney can petition for reinstatement, Fusco will face over a five-year suspension before he can petition for reinstatement unless he receives credit for time served under his interim felony suspension. Based on our precedent from similar cases, I would grant him one year of credit for time served.

*Credit for Time Served*

{¶ 70} In other contexts, the law provides credit for time served as a matter of course. In a criminal case, for example, a defendant who has been incarcerated before trial will receive credit for his time in custody before conviction. *See* R.C. 2967.191(A). Doing so serves several important interests. It ensures that people who receive like sentences serve the same amount of time. It protects against punishing someone twice for the same crime. And it ensures that delays in the court system do not serve to unfairly increase a defendant's punishment. Granting credit for time served means that one convicted of a crime ordinarily will not spend more time in custody simply because the prosecution dragged its feet or because a judge took a long time to render a decision.

{¶ 71} Despite the obvious fairness rationales that support granting credit for time served, this court has never adopted a rule requiring credit for time served under interim felony suspensions in disciplinary cases. Instead, we have decided whether to grant credit for time served on a case-by-case basis. *See* Gov.Bar R. V(17)(D)(2) (we "may allow full or partial credit for any period of" an interim felony suspension imposed under section 18 of Gov.Bar R. V). There is some logic to this approach. Under our rules, the maximum suspension that we may impose short of an indefinite suspension is two years. Gov.Bar R. V(12)(A)(2) and (3).

And when we impose an indefinite suspension, the attorney is eligible to apply for reinstatement after two years. Gov.Bar R. V(25)(A)(1). So by refusing to grant credit for time served under an interim felony suspension, we can effectively increase the overall suspension period (or the waiting period to apply for reinstatement) when we believe the facts warrant such treatment.[1]

**{¶ 72}** Nevertheless, in deciding whether to grant credit for time served, we must be careful to ensure that to the extent possible we are treating like cases alike. In other words, we must not disproportionately punish someone simply because of the length of time that the disciplinary case has drawn out or the amount of time that it has taken this court to render a decision.

*Fusco Should Receive at Least Partial Credit for Time Served*

**{¶ 73}** Fusco was suspended on an interim basis on September 21, 2022—1,171 days ago. Of those days, 427 have been while the matter was pending in this court. Without credit for time served, Fusco faces a minimum overall suspension of 1,901 days before he can petition for reinstatement. This punishment is incommensurate with the punishment in other similar cases, both in our failure to grant credit for time served and in the overall suspension that Fusco must serve before being eligible to apply for reinstatement.

**{¶ 74}** As the majority notes, there are several cases in which this court imposed indefinite suspensions on attorneys who had engaged in financial or tax crimes. Majority opinion, ¶ 40, citing *Mahoning Cty. Bar Assn. v. Rohrbaugh*, 2024-Ohio-5127. This court in *Rohrbaugh* cited several of those decisions. *Rohrbaugh* at ¶ 19. Based on my review, those cases do not support the result the majority reaches today, because we either credited the attorneys for time served

---

1. Of course, one might argue that a fairer and more transparent way to accomplish these same ends would be to increase the range of suspensions that this court may impose and grant credit for time served to every attorney who has served an interim felony suspension.

under interim felony suspensions, the waiting periods before the attorneys were eligible to petition for reinstatement was shorter, or both.

{¶ 75} For example, the majority relies on *Disciplinary Counsel v. Gittinger*, 2010-Ohio-1830. In that case, we imposed an indefinite suspension but gave Gittinger credit for all the time he served under his interim felony suspension that could then be applied against the two-year waiting period before he could petition for reinstatement. *Id*. at ¶ 49. We also imposed an indefinite suspension with credit for all the time served under an interim felony suspension in *Disciplinary Counsel v. Bennett*, 2010-Ohio-313, ¶ 28; *Rohrbaugh* at ¶ 27; and *Disciplinary Counsel v. Smith*, 2011-Ohio-957, ¶ 16. In fact, the majority acknowledges that we have "often" awarded credit in fraud cases like Fusco's. Majority opinion at ¶ 49. Out of the 14 fraud cases the majority identifies, we granted credit for time served in 10 of them. *See id.* at ¶ 49-50. The majority's decision to not grant Fusco credit for time served makes his case an outlier under our precedent.

{¶ 76} But what makes Fusco's case even more aberrant is that the total suspension he will serve before he is eligible to apply for reinstatement is much longer than the suspensions in other comparable cases. The majority cites *Disciplinary Counsel v. Kraemer*, 2010-Ohio-3300, and *Gittinger* in support of its decision to impose an indefinite suspension with no credit for time served, claiming that Fusco's misconduct is more egregious than Kraemer's misconduct and Gittinger's misconduct. *See* majority opinion at ¶ 24-27. In *Kraemer*, we imposed a two-year suspension and gave the attorney credit for one year of time served under his interim felony suspension. *Kraemer* at ¶ 15. We stayed the remaining year of the two-year suspension and said Kraemer could immediately petition for reinstatement, meaning he was suspended from the practice of law for 741 days before he was eligible to petition for reinstatement. And as previously noted, the attorney in *Gittinger* received credit for the entirety of his interim felony

suspension. That means his total suspension period was 730 days, and he was eligible to petition for reinstatement 165 days after this court's judgment imposing an indefinite suspension. *See Gittinger* at ¶ 1, 49.

{¶ 77} The majority also concludes that *Disciplinary Counsel v. Muntean*, 2010-Ohio-6133; *Disciplinary Counsel v. George*, 2020-Ohio-2902; and *Cleveland Metro. Bar Assn. v. King*, 2019-Ohio-4715, are instructive here. Majority opinion at ¶ 27. In *Muntean*, the interim felony suspension lasted 346 days, which was credited as time served. *Muntean* at ¶ 2, 13. That brought Muntean's total suspension to 384 days before he was eligible to petition for reinstatement.

{¶ 78} *George* and *King* involved sanctions that are closer to what the majority imposes today but involved misconduct even more egregious than Fusco's. In *George*, the attorney was convicted of conspiracy to commit federal wire fraud and securities fraud after participating in a scheme that bilked more than 70 investors out of more than $31 million over nearly four years. We imposed an indefinite suspension with no credit for time served under George's interim felony suspension. *George* at ¶ 19. Combining the interim felony suspension and the sanction this court imposed, George was suspended for a total of 1,997 days before he was eligible to petition for reinstatement. *See id.* at ¶ 1, 19. *King* involved an attorney's attempted scheme to launder drug-trafficking proceeds. We rejected the relator's argument for permanent disbarment and instead imposed an indefinite suspension with no credit for time served under King's interim felony suspension. *See King* at ¶ 12, 20. Including the time served under his interim suspension, King was required to wait 1,950 days before he was eligible to petition for reinstatement. *See id.* at ¶ 1, 20.

{¶ 79} Considering these examples, Fusco's combined suspension period of 1,901 days before he can petition for reinstatement is closer to the two cases with more egregious misconduct, *George* and *King*, than it is to most of our other decisions. Without credit for time served, Fusco not only faces a markedly longer

overall suspension than other attorneys with similar misconduct but he will also have to wait longer to petition for reinstatement than our precedent instructs.

**{¶ 80}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 2002-Ohio-4743, ¶ 16. It is relevant here that Fusco cooperated with the disciplinary process and stipulated to the charged misconduct. The three-member panel of the Board of Professional Conduct concluded that based "on its observation of [Fusco and] his testimony," it "believe[ed] firmly [that] he is most unlikely to again violate the Rules of Professional Conduct."

**{¶ 81}** This court has said that "'[t]he law of precedent teaches that like cases should generally be treated alike.'" *State ex rel. Ohio Bur. of Workers' Comp. v. O'Donnell*, 2023-Ohio-428, ¶ 20, quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018). In light of our precedent, treating like cases alike would mean granting Fusco at least one year of credit for time served under his interim felony suspension. For these reasons, I respectfully concur in part and dissent in part.

————————————

Joseph M. Caligiuri, Disciplinary Counsel, and Marley C. Nelson, Assistant Disciplinary Counsel, for relator.

Betras Kopp, L.L.C., and David J. Betras, for respondent.

————————————